57 A.3d 18

DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE ON BEHALF OF HSI ASSET SECURITIZATION CORPORATION TRUST 2006–HEI, PLAINTIFF–RESPONDENT, v. CONRAD D. RUSSO AND IRENE RUSSO, DEFENDANTS–APPELLANTS.

Superior Court of New Jersey
Appellate Division

Argued October 10, 2012—Decided November 14, 2012.

Before Judges REISNER, YANNOTTI [1] and HARRIS.

*Jessica T. Zolotorofe* argued the cause for appellants (*Ansell Grimm & Aaron, PC,* attorneys; *Lawrence H. Shapiro* and *Ms. Zolotorofe,* on the brief).

---

[1] Judge Yannotti did not participate in oral argument, but joins in the opinion with the consent of counsel. *See R.* 2:13–2(b).

*Edward A. Vincent* argued the cause for respondent (*Frenkel Lambert Weiss Weisman & Gordon, LLP,* attorneys; *Mr. Vincent,* on the brief).

The opinion of the court was delivered by

REISNER, P.J.A.D.

Defendants Conrad and Irene Russo appeal from a December 7, 2011 order denying their application to further restrain a sheriff's sale, and denying as untimely their motion to vacate a final judgment of foreclosure entered on March 17, 2009 in favor of plaintiff Deutsche Bank National Trust Company. We affirm.

I

On July 13, 2006, defendants refinanced the existing mortgage on their home by executing a note and mortgage in the amount of $458,700 in favor of Mortgage Electric Registration Systems, Inc. (MERS) as nominee for Countrywide Home Loans, Inc. (Countrywide). The note disclosed, in large capital letters, that it was an "interest only" loan. Its terms produced a lower monthly mortgage payment for five years, followed by a significantly higher monthly payment beginning after the fifth year. According to defendants, as part of the loan package, $31,000 in points and fees were added to the principal balance of the loan.[2] They contend that they did not realize the mortgage would increase their principal indebtedness and would eventually result in higher monthly payments. However, defendants defaulted on the loan long before they were required to begin repaying the principal or making the higher monthly payments. On June 1, 2007, less than a year into the mortgage term, defendants stopped making payments.

Plaintiff sent defendants a Notice of Intention to Foreclose by certified mail on September 24, 2007. Irene Russo signed the

---

[2] Defendants did not produce any documentation to support this claim.

certified mail receipt. Plaintiff filed the foreclosure complaint on November 27, 2007. There is no dispute that the complaint was properly served on defendants on January 24, 2008. They failed to file an answer, and default was entered on June 3, 2008. After serving defendants with the required notice of intent to enter a final judgment, plaintiff obtained a final foreclosure judgment on March 17, 2009. There is no dispute that defendants were aware that the final judgment had been entered.

A sheriff's sale was first scheduled to take place on May 24, 2010, but was adjourned because Conrad Russo filed for bankruptcy on May 19, 2010. The Bankruptcy Court granted him a discharge on September 17, 2010. For various reasons, the sheriff's sale was adjourned a total of seventeen times. Finally, on July 5, 2011, defendants filed their first pleading in the foreclosure action, an order to show cause seeking to stay the sheriff's sale and seeking to vacate the 2009 final judgment of foreclosure pursuant to *Rule* 4:50–1(d) and (f).[3]

In their motion, defendants argued that plaintiff lacked standing to file the foreclosure complaint, because it did not take an assignment of the mortgage until after the complaint was filed. The motion record filed with the trial court disclosed the following information. Countrywide, now doing business as Bank of America, has continued to service the loan since it originated on July 13, 2006. However, on August 15, 2006, the relevant collateral file was allegedly transferred to Wells Fargo Bank M.N., and was then transferred to Wells Fargo Bank N.A., the servicer and custodian for the current plaintiff Deutsche Bank, on October 31, 2006. However, an assignment acknowledging Deutsche Bank as

---

[3] In pertinent part, *Rule* 4:50–1 permits a court to vacate a final judgment on these grounds: "(a) mistake, inadvertence, surprise, or excusable neglect; ... (c) fraud ... (d) the judgment or order is void; ... or (f) any other reason justifying relief from the operation of the judgment or order." A motion pursuant to (a) or (c) must be filed within a year after entry of the judgment, while motions pursuant to (d) and (f) must be filed "within a reasonable time." *R.* 4:50–2. On appeal, defendants claim for the first time that the judgment was obtained by fraud. *See Rule* 4:50–1(c). That claim is untimely. *R.* 4:50–2.

the legal possessor of the note and mortgage was not signed and recorded until June 17, 2008, seven months after the complaint was filed.

In a lengthy oral opinion placed on the record on December 6 and 7, 2011, Judge Thomas W. Cavanagh, Jr. held that defendants had not filed their *Rule* 4:50 motion within a reasonable time after entry of the foreclosure judgment. He further found that they produced no proof of excusable neglect for their failure to file a timely answer to the complaint or for the years of delay in filing their motion. He also rejected their standing argument, accepting plaintiff's proof that it had possession of the note at the time the foreclosure complaint was filed. In fact, the trial judge stated that he had required plaintiff to produce a certified copy of the note itself:

Now, the track of title here, according to the person rendering the certification, who says that she did so on personal knowledge, and the information compiled in her cert was done [from] the business records, which were recorded by people with personal knowledge of the information, or from persons transmitting personal knowledge, goes as follows. The original loan was given to the defendants in 2006, and Mr. Russo executed a note to Countrywide Home Loans, Inc. The mortgage was parked at MERS as nominee for Countrywide, which is something that occurs frequently. Countrywide ultimately was absorbed into Bank of America, N.A., and Countrywide continued to service the loan since the date of origination. On August 15, 2006, the collateral file was transferred to Wells Fargo. The collateral was then transferred to Wells Fargo Bank, the servicer and custodian for Deutsche Bank National Trust Company as trustee on behalf of HSI. That is, of course, the plaintiff in this case. That occurred on October 31, 2006. Wells Fargo is the servicer and custodian for the owner of the note, which is the Deutsche Bank Securitized Trust. The plaintiff purchased the note in 2006, and is the owner of the note pursuant to the consideration which was paid for the note in 2006. Under U.C.C. Section 3–301, a person entitled to enforce the obligation is either a holder, or a non-holder in possession who has the rights of a holder.

... [A] certified copy of the note was forwarded to the court in September of 2011, and a copy is by now, I'm sure, in the possession of the defendants. The note contains a bearer allonge endorsed in blank by Countrywide and obviously was in the possession of the plaintiff through its servicer in accordance with PSA since 2006. That occurred prior to the default, so there is no holder in due course issue to be raised.

The judge further reasoned that defendants had not denied the validity of the note, denied their default, or raised any other meritorious defense to the enforcement of the mortgage:

[T]here was no question that ... the defendants ... acknowledge the validity of the note and mortgage in the sense that there is no claim that the money was not received, nor that they have defaulted and there is no underlying defense as to the basic components of the mortgage. Throughout the years of correspondence and orders, at no time have the defendants ever said you have the wrong parties, or we didn't borrow the money, or we didn't default. Basically, they've accepted the underlying aspect of the action over many, many months and years.

## II

We review the trial court's decision for abuse of discretion. *US Bank Nat'l Ass'n v. Guillaume*, 209 *N.J.* 449, 467, 38 *A.*3d 570 (2012). "The trial court's determination under [*Rule* 4:50–1] warrants substantial deference," and the abuse of discretion must be clear to warrant reversal. *Ibid.* (citing *DEG, LLC v. Twp. of Fairfield*, 198 *N.J.* 242, 261, 966 *A.*2d 1036 (2009)). On this record, we find no abuse of discretion in Judge Cavanagh's decision.

Under *Rule* 4:50–1(a), "[a] defendant seeking to set aside a default judgment must establish that his failure to answer was due to excusable neglect and that he has a meritorious defense." *Goldhaber v. Kohlenberg*, 395 *N.J.Super.* 380, 391, 928 *A.*2d 948 (App.Div.2007). " 'Excusable neglect' may be found when the default was 'attributable to an honest mistake that is compatible with due diligence or reasonable prudence.' " *Guillaume, supra*, 209 *N.J.* at 468, 38 *A.*3d 570 (quoting *Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n*, 132 *N.J.* 330, 335, 625 *A.*2d 484 (1993)). A *Rule* 4:50–1(d) motion, based on a claim that the judgment is void, does not require a showing of excusable neglect but must be filed within a reasonable time after entry of the judgment. *See R.* 4:50–2; *M & D Assocs. v. Mandara*, 366 *N.J.Super.* 341, 351–52, 841 *A.*2d 441 (App.Div.2004), *certif. denied*, 180 *N.J.* 151, 849 *A.*2d 184 (2004).

Defendants first claim that they presented a reasonable explanation for the delay in filing their motion. They contend that "based on representations from the loan servicer," they believed that "no foreclosure action would proceed while they were actively

working toward a loan modification." While defendants make that representation in their appellate brief, they produced no legally competent evidence to support that contention. Irene Russo's motion certification described defendants' efforts to save their home by working with a variety of private financial consultants and attorneys, none of whom were employed by plaintiff, and later, by applying for a loan modification. But nowhere in her certification is there any statement that plaintiff told defendants that they did not need to file an answer to the complaint or that the foreclosure would be held in abeyance.

Our Supreme Court recently held in *Guillaume* that this fact pattern does not constitute excusable neglect. As here, the *Guillaume* defendants made bald assertions that they believed they did not need to file an answer or otherwise defend the foreclosure action. The Court held:

> The trial court properly rejected this contention, holding that the Guillaumes were fully informed of the existence of a 'court process' requiring a legal response for over a year, and that U.S. Bank's communications with them regarding loan modification did not alter the analysis.... There is no evidence that U.S. Bank suggested to the Guillaumes that it was unnecessary to respond to the foreclosure action.... Notwithstanding the repeated notices, the Guillaumes took no action to respond to the foreclosure complaint, and the record reflects no excuse for their inaction.

[*Guillaume, supra,* 209 *N.J.* at 468–69, 38 *A*.3d 570.]

Further, as we recently held in *Deutsche Bank Trust Co. Americas v. Angeles,* 428 *N.J.Super.* 315, 53 *A*.3d 673 (App.Div. 2012), "[m]otions made under any *Rule* 4:50–1 subsection 'must be filed within a reasonable time.'" *Id.* at 319, 53 *A*.3d 673 (quoting *Orner v. Liu,* 419 *N.J.Super.* 431, 437, 17 *A*.3d 266 (App.Div.), *certif. denied,* 208 *N.J.* 369, 29 *A*.3d 741 (2011)). We also noted that, pursuant to *Rule* 4:50–2, "motions based on *Rule* 4:50–1(a), (b) and (c)" must be filed within a year of the judgment. *Ibid.* Therefore, a *Rule* 4:50 motion based on excusable neglect is barred if it is filed more than one year after the foreclosure judgment was entered. *Ibid.* Additionally, as we held in *Deutsche Bank,* equitable considerations may justify a court in rejecting a

foreclosure defendant's belated attempt to raise as a defense the plaintiff's lack of standing:

> In foreclosure matters, equity must be applied to plaintiffs as well as defendants. Defendant did not raise the issue of standing until he had the advantage of many years of delay. Some delay stemmed from the New Jersey foreclosure system, other delay was afforded him through the equitable powers of the court, and additional delay resulted from plaintiff's attempt to amicably resolve the matter. Defendant at no time denied his responsibility for the debt incurred.... Rather, when all hope of further delay expired ... he made a last-ditch effort to relitigate the case. The trial court did not abuse its discretion in determining that defendant was not equitably entitled to vacate the judgment.
>
> [*Id.* at 320, 53 *A.*3d 673]

A similar result was suggested in *Bank of New York v. Raftogianis*, 418 *N.J.Super.* 323, 13 *A.*3d 435 (Ch.Div.2010). Addressing a situation in which a plaintiff filed the complaint before it had possession of the note or a valid assignment of the mortgage, the court observed that dismissal of the complaint without prejudice might not always be the appropriate remedy:

> Whether any particular action should in fact be dismissed should be addressed on a case-to-case basis, dependent on all the circumstances. As a general matter, dismissal will probably be appropriate, if only to provide a clear incentive to plaintiffs to see that the issue of standing is properly addressed before any complaint is filed. There may be cases, however, where dismissal would not be appropriate. That may be the case if the defendant fails to raise the issue promptly, or when substantial time and effort may have been devoted to addressing other matters that would then have to be revisited in any new litigation.
>
> [*Id.* at 356, 13 *A.*3d 435.]

In *Guillaume*, the Court confirmed that dismissal of the complaint is not necessarily the appropriate remedy for a filing defect in a foreclosure complaint. In that case, the notice of intention to foreclose did not list the name and address of the lender, which the Court held was legally required. However, the Court held that

> dismissal without prejudice is not the exclusive remedy for the service of a notice of intention that does not satisfy *N.J.S.A.* 2A:50–56(c)(11). A trial court adjudicating a foreclosure complaint in which the notice of intention does not comply with *N.J.S.A.* 2A:50–56(c)(11) may dismiss the action without prejudice, order the service of a corrected notice, or impose another remedy appropriate to the circumstances of the case.... Given the Guillaumes' thorough familiarity with the status of their mortgage—reflected in their consultations with a professional

adviser and active loan modification negotiations with ASC—the trial court's remedy of a cure constituted a proper exercise of its discretion.

[*Guillaume, supra,* 209 *N.J.* at 475–76, 38 *A.*3d 570.]

Because the Fair Foreclosure Act violation that the defendants asserted would not require dismissal of the complaint, the Court held that "the FFA does not provide a 'meritorious defense' to this action within the meaning of *Rule* 4:50–1(a)." *Id.* at 480, 38 *A.*3d 570.

Based on our reading of *Guillaume* and *Deutsche Bank,* we conclude that, even if plaintiff did not have the note or a valid assignment when it filed the complaint, but obtained either or both before entry of judgment, dismissal of the complaint would not have been an appropriate remedy here because of defendants' unexcused, years-long delay in asserting that defense. Therefore, in this post-judgment context, lack of standing would not constitute a meritorious defense to the foreclosure complaint.

In reaching that conclusion, we note that, contrary to defendants' contention, standing is not a jurisdictional issue in our State court system and, therefore, a foreclosure judgment obtained by a party that lacked standing is not "void" within the meaning of *Rule* 4:50–1(d). In the federal courts, standing is a jurisdictional concept, because Article III of the United States Constitution limits the jurisdiction of the federal courts to cases and controversies. *See Raftogianis, supra,* 418 *N.J.Super.* at 353, 13 *A.*3d 435 (citing *In re Foreclosure Cases,* 521 *F.Supp.*2d 650, 653–54 (S.D.Ohio 2007)).

By contrast, the Superior Court of New Jersey is a court of general jurisdiction, *Swede v. Clifton,* 22 *N.J.* 303, 314, 125 *A.*2d 865 (1956), and in our courts, the requirement that a party have standing is a matter of judicial policy not constitutional command. *See DeVesa v. Dorsey,* 134 *N.J.* 420, 428, 634 *A.*2d 493 (1993) ("Unlike the Federal Constitution, the New Jersey Constitution does not confine the exercise of the judicial power to actual cases and controversies. *See U.S. Const.* art. III, § 2, cl. 1; *N.J. Const.* art. VI, § 1, para. 1.") (Pollock, J., concurring); *Salorio v.*

*Glaser,* 82 *N.J.* 482, 490–91, 414 *A.*2d 943, *cert. denied,* 449 *U.S.* 804, 101 *S.Ct.* 49, 66 *L.Ed.*2d 7 (1980). "Because standing affects whether a matter is appropriate for judicial review rather than whether the court has the power to review the matter, and standing is a judicially constructed and self-imposed limitation, it is an element of justiciability rather than an element of jurisdiction." *N.J. Citizen Action v. Riviera Motel Corp.,* 296 *N.J.Super.* 402, 411, 686 *A.*2d 1265 (App.Div.1997), *appeal dismissed,* 152 *N.J.* 361, 704 *A.*2d 1297 (1998); *see also Gilbert v. Gladden,* 87 *N.J.* 275, 280–81, 432 *A.*2d 1351 (1981) (distinguishing the concept of justiciability from that of subject matter jurisdiction).[4]

Finally, based on our review of the record, we find no evidence that defendants have any other meritorious defense. They claim that they were defrauded into taking an interest-only loan that would eventually result in higher mortgage payments. But they produced no proof that the alleged fraud caused them to default on the mortgage. *See Jewish Center of Sussex County v. Whale,* 86 *N.J.* 619, 624, 432 *A.*2d 521 (1981) (fraud requires proof that the victim relied "to his detriment" on a material misrepresentation). They stopped making payments in the first year of the mortgage, long before the monthly payments were scheduled to increase.[5]

Affirmed.

---

[4] There is no dispute that plaintiff obtained a valid assignment of the mortgage, albeit some months after the complaint was filed. Hence, standing issues aside, it had a legal right to enforce the note, pursuant to the Uniform Commercial Code, *N.J.S.A.* 12A:3–301, at the time it obtained the judgment. *See Wells Fargo Bank, N.A. v. Ford,* 418 *N.J.Super.* 592, 597, 15 *A.*3d 327 (App.Div.2011). Contrary to defendants' argument on this appeal, the judgment was not obtained by fraud. *R.* 4:50–1(c).

[5] Nor have defendants produced any evidence that the alleged increase in the principal balance, or in the post-fifth-year interest rate, precluded them from redeeming the property or from selling the house at a price that would yield them some equity.