**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3156-17T2

M.J.,

    Plaintiff-Appellant,

v.

K.J.,

    Defendant-Respondent.

_____

        Submitted February 14, 2019 – Decided March 28, 2019

        Before Judges Simonelli and Whipple.

        On appeal from Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FM-10-0276-18.

        M.J., appellant pro se.

        Respondent has not filed a brief.

PER CURIAM

In this post-judgment matrimonial matter, plaintiff M.J.[1] appeals from the February 2, 2018 Family Part order, which denied her motion to vacate orders entered in 2013 and 2014 suspending defendant K.J.'s alimony obligation, and to reinstate alimony with arrears, modify alimony, and modify a final restraining order (FRO) entered against her. We affirm.

Plaintiff and defendant were married in 1989, and have three children, born in 1989, 1992, and 2001, respectively. During the marriage, plaintiff suffered from mental health problems that worsened in 2008 when she became non-compliant with her medication. In February 2009, plaintiff attempted suicide and was admitted to a mental health facility. She was diagnosed with bipolar disorder and prescribed medication. She continued to be non-compliant with her medication and was hospitalized several more times in mental health facilities.

Also in 2009, plaintiff became obsessed with her chiropractor and began stalking and harassing her. Plaintiff's conduct led to criminal charges and the entry of an order of protection. Plaintiff violated the order several times, was incarcerated, and received sentences of extensive probation.

---

[1] We use initials to protect the parties' privacy interests. See R. 1:38-3(d).

A-3156-17T2

Plaintiff filed a complaint for divorce in 2009. On August 13, 2009, the parties executed a consent order, which gave defendant and the children exclusive possession of the marital home. Plaintiff subsequently broke into the marital home and threatened defendant and the children. Plaintiff was arrested and admitted to a mental health facility. Defendant obtained a temporary restraining order (TRO) against plaintiff, which she violated by contacting him.

Plaintiff continuously harassed defendant during the divorce proceeding. Plaintiff's behavior was interfering with defendant's ability to work and he became increasingly frightened about what plaintiff might do next. On March 31, 2010, defendant obtained a FRO against plaintiff, which barred plaintiff from having contact with defendant and the children, but permitted plaintiff to have parenting time under the divorce matter.

On January 3, 2011, the court entered an amended final judgment of divorce, which incorporated the parties' Marital Settlement Agreement (MSA). Under the MSA, defendant had sole legal and residential custody of the children and the right to make all decisions relating to their best interests, and plaintiff had supervised parenting time of two, one-hour visits per week with the parties' youngest child. The MSA provided that the parties' two older children would

make their own determinations as to when and under what circumstances they wished to see plaintiff.

The MSA required defendant to pay alimony in the amount of $2000 per month until the earliest of plaintiff's or defendant's death, plaintiff's remarriage, defendant's good faith retirement, or plaintiff's cohabitation with an unrelated adult. Alimony was to increase to $2400 per month upon emancipation of the parties' second child, and to $2800 per month upon emancipation of their youngest child.

Plaintiff violated the FRO and was incarcerated from February 2011 to April 2011. After her release, she again violated the FRO and was incarcerated in May 2011. Plaintiff pled guilty to three instances of contempt of the FRO and was sentenced in July 2011 to a 180-day jail term with credit for eighty-six days time served.

On September 8, 2011, the court entered an order and statement of reasons retroactively suspending defendant's alimony obligation as of March 2011, and ordering the suspension to continue with no arrears to accrue "so long as plaintiff is incarcerated or institutionalized." The court found plaintiff's conduct was "deliberate fault directed toward [d]efendant[,]" and continuing defendant's alimony obligation "while [p]laintiff remain[ed] incarcerated for having

committed criminal acts against him effect[ed] an inequitable result." The court noted that plaintiff's incarceration since February 2011 arose from her criminal conduct toward defendant and directly related to violations of the FRO. The court ordered alimony to resume upon plaintiff's release from jail.

Defendant resumed paying alimony in 2012, after plaintiff's release from jail. Plaintiff again violated the FRO after her release. The last violation occurred on January 16, 2013, when plaintiff approached defendant in the parking lot where he worked and pointed what he believed was a handgun at him. The handgun was later found to be an unloaded BB gun replicated to look like a semi-automatic gun. Defendant was "[p]etrified that [he] was about to be murdered [and] ran for [his] life, while calling 911."

Plaintiff fled in her car, but the police found her with the BB gun and arrested her. She was transported to the Somerset Medical Center Hospital because she was suicidal. She was subsequently transported to the Somerset County jail, where she remained for ten months.

A grand jury indicted plaintiff for second-degree possession of a weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); third-degree unlawful possession of a weapon, N.J.S.A. 2C:39-5(b); and fourth-degree violation of a FRO, N.J.S.A. 2C:29-9(b). Plaintiff pled not guilty by reason of insanity.

On March 1, 2013, the court entered an order and statement of reasons retroactively suspending defendant's alimony obligation as of January 16, 2013, with arrears to accrue. The court ordered the suspension to continue, but no enforcement action to be taken, "so long as plaintiff is involved with the judicial system as a result of the January [16], 2013 incident." The court incorporated the findings made on September 8, 2011 that plaintiff's conduct was deliberate fault directed toward defendant and continuing defendant's alimony obligation while plaintiff remained incarcerated for having committed criminal acts against him effected an inequitable result.

On September 24, 2013, the court entered a judgment of acquittal by reason of insanity and order for commitment in the criminal matter. The court placed plaintiff on Krol[2] status and committed her to a State mental health facility until further order of the court. On October 8, 2013, plaintiff was placed in Greystone Park Psychiatric Hospital (Greystone), where she remained until May 12, 2017.

On January 28, 2014, the court entered an order and statement of reasons modifying the March 1, 2013 order to provide that defendant's alimony obligation was suspended with no arrears to accrue. The court found as follows:

---

[2] State v. Krol, 68 N.J. 236 (1975).

In light of the court's earlier finding that plaintiff is mentally incompetent, and considering her involuntary hospitalization as a ward of the [S]tate, the court finds it appropriate, as a matter of fundamental fairness, to suspend defendant's alimony payments indefinitely. The court agrees with defendant that, as a matter of fundamental fairness, he should not be obligated to pay plaintiff alimony as long as she remains a ward of the [S]tate. The court is not terminating defendant's alimony obligation. The obligation is being suspended, temporarily without accrual of arrears. In view of the finding of insanity, plaintiff cannot be held legally responsible for her conduct back on January 16, 2013. The fact remains, however, that plaintiff's conduct on that occasion had an adverse impact upon defendant and, undoubtedly, the parties' children.

Alimony and support orders define only the present obligations of the former spouses. Those duties are always subject to review and modification on a showing of changed circumstances. . . . One of the main purposes of alimony is to assist the supported spouse in achieving a lifestyle that is reasonably comparable to the one enjoyed while living with the supporting spouse during the marriage. . . . All of plaintiff's day-to-day needs are currently being provided to her by the State of New Jersey. Consequently, she would be receiving something of a windfall were the court to impose upon defendant the obligation to continue to make alimony payments while plaintiff remains hospitalized.

The court concluded that "[i]f and when plaintiff is released from her involuntary commitment, the alimony obligation will be reinstated. Defendant, at that time, may elect to petition the court to terminate his alimony obligation

7

or to reduce that obligation based upon a further balancing of the equities." The court also denied plaintiff's request to allow alimony arrears to accrue and to modify the FRO to permit her to have communication with her children.

On October 2, 2014, the court entered an order and statement of reasons denying plaintiff's motion to vacate the FRO and allow parenting time and contact with the parties' youngest child. The court analyzed the factors in Carfagno v. Carfagno, 288 N.J. Super. 424, 434-35 (Ch. Div. 1995), and found they strongly weighed against vacating the FRO. The court also denied plaintiff's motion to reinstate alimony, finding she had not been released from Greystone and had not provided concrete proof that she would be released at the next Krol hearing on October 8, 2014. The court also found there was no compelling reason to modify the January 28, 2014 order.

Plaintiff was released from Greystone on May 12, 2017, but remained in a supervised program that provided her with an apartment. She was still under the court's jurisdiction on Krol status after her release and had to continue her psychiatric treatment and medication.

Plaintiff filed a motion to vacate the March 1, 2013 and January 28, 2014 orders pursuant to Rule 4:50-1(e) and (f); retroactively reinstate alimony as of November 1, 2017 with arrears in the amount of $122,800; and grant an upward

modification of alimony. Plaintiff argued the court should reinstate alimony because she was released from Greystone, and there was a change in circumstances warranting an upward modification of alimony because she was no longer involuntarily committed. She also argued the MSA barred a modification of alimony and she was not legally responsible for the January 16, 2013 incident. Plaintiff also sought a modification of the FRO to permit contact with her children.

On February 2, 2018, the court entered an order and statement of reasons denying plaintiff's motion to reinstate alimony and for an upward modification of alimony without prejudice. The court found plaintiff had not satisfied the requirements of the March 1, 2013 and January 28, 2014 orders because she remained involved with the judicial system on Level III Krol status and was still a ward of the State and under the State's supervision and control.

The court also found that plaintiff failed to demonstrate a change in circumstances warranting an upward modification of alimony, as she was still under the State's care and the State was meeting her day-to-day needs.[3] The

---

[3] In addition to the State meeting her day-to-day needs, plaintiff was receiving Social Security disability benefits.

court further found that plaintiff failed to file a Case Information Statement or other documentation to demonstrate she had a need for alimony at that time.

The court determined that plaintiff failed to demonstrate entitlement to relief under Rule 4:50-1(e). The court found there was no significant change in circumstances after entry of the last order on October 2, 2014, and plaintiff failed to show continued enforcement would result in extreme or unexpected hardship, as the State was meeting her needs. The court concluded that "[i]n the future, when that is not the case, [p]laintiff's spousal support may be reinstated. At this time, not receiving spousal support does not cause her hardship."

The court also determined that plaintiff failed to demonstrate entitlement to relief under Rule 4:50-1(f). The court reasoned that the suspension of plaintiff's spousal support while she remained under the State's custody and control was not "unjust, oppressive or inequitable[,]" but rather, "[i]t would be unjust, oppressive or inequitable to [d]efendant to require him to pay support while [p]laintiff remains in custody for her behavior against him." The court emphasized that plaintiff could seek reinstatement of her spousal support when she is released from Krol status. Lastly, the court declined to modify the FRO to allow plaintiff to have contact with the children. This appeal followed.

As a threshold matter, we note that plaintiff's notice of appeal states she is appealing only from the February 2, 2018 order and only as to the alimony issues. "[I]t is only the judgments or orders or parts thereof designated in the notice of appeal which are subject to the appeal process and review." Pressler & Verniero, Current N.J. Court Rules, cmt. 6.1 on R. 2:5-1(e)(1) (2019); see also 1266 Apt. Corp. v. New Horizon Deli, Inc., 368 N.J. Super. 456, 459 (App. Div. 2004). Thus, plaintiff's challenges to the FRO and all other orders mentioned in this opinion are not properly before us. See W.H. Indus., Inc. v. Fundicao Balancins, Ltda, 397 N.J. Super. 455, 458 (App. Div. 2008). Accordingly, we focus on that part of the February 2, 2018 order denying plaintiff's motion to vacate the March 1, 2013, and January 28, 2014 orders pursuant to Rule 4:50-1(e) and (f), retroactively reinstate alimony with arrears, and grant an upward modification of alimony.

We review the trial court's denial of a motion to vacate a final judgment or order for abuse of discretion. Deutsche Bank Nat'l Tr. Co. v. Russo, 429 N.J. Super. 91, 98 (App. Div. 2012). "'The trial court's determination under [Rule 4:50-1] warrants substantial deference,' and the abuse of discretion must be clear to warrant reversal." Ibid. (alteration in original) (quoting U.S. Bank v. Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)). An "abuse of discretion only

11

arises on demonstration of 'manifest error or injustice[,]'" Hisenaj v. Kuehner, 194 N.J. 6, 20 (2008) (quoting State v. Torres, 183 N.J. 554, 572 (2005)), and occurs when the trial court's "decision is 'made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012) (quoting Flagg v. Essex Cty. Prosecutor, 171 N.J. 561, 571 (2002)). We discern no abuse of discretion here.

Rule 4:50-1(e) provides for relief from a judgment or order where "it is no longer equitable" because of changed legal or factual circumstances. DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 265 (2009) (quoting R. 4:50-1(e)). Our Supreme Court has looked to federal jurisprudence to ascertain the meaning of Rule 4:50-1(e), and observed that under the federal counterpart to our rule, "[t]he party seeking relief bears the burden of proving that events have occurred subsequent to the entry of a judgment that, absent the relief requested, will result in 'extreme' and 'unexpected' hardship[.]" Id. at 266 (alteration in original) (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 285 (1994)). Nevertheless, the Court observed that the United States Supreme Court has "moved towards a more flexible standard" than that provided in Little, that is, one "that does not require the additional showing of grievous hardship evoked

by new and unforeseen conditions." Id. at 267. However, even with the more flexible standard, modification of a judgment is not appropriate in every instance, and it would not be appropriate simply "because 'it is no longer convenient to live with the terms of [the] decree.'" Ibid. (quoting Rufo v. Inmates of Suffolk Cty. Jail, 502 U.S. 367, 383 (1992)).

Under the relaxed standard, "[a] party seeking modification . . . may meet its initial burden by showing a significant change either in factual conditions or in law." Ibid. (quoting Rufo, 502 U.S. at 384). Under either the Little standard or the more relaxed Rufo standard,

> relief from judgment should ordinarily not be granted where the so-called changed circumstances were actually anticipated [at the time of the decree]. In such a case, a party seeking relief has the 'heavy' burden of establishing . . . that [he or she] made a reasonable effort to comply with the judgment.
>
> [Id. at 268 (quoting Rufo, 502 U.S. at 385).]

Rule 4:50-1(f) provides for relief from a judgment or order for "any other reason justifying relief from the operation of the judgment or order." Relief pursuant to Rule 4:50-1(f) "is available only when 'truly exceptional circumstances are present.'" Little, 135 N.J. at 286 (quoting Baumann v. Marinaro, 95 N.J. 380, 395 (1984)). "[I]n order to obtain relief under this subsection, the movant must ordinarily show that the circumstances are

exceptional and that enforcement of the order or judgment would be unjust, oppressive or inequitable." Pressler & Verniero, Current N.J. Court Rules, cmt. 5.6.1 on R. 4:50-1(f) (2019). As our Supreme Court stated:

> No categorization can be made of the situations which would warrant redress under subsection (f) . . . . [T]he very essence of (f) is its capacity for relief in exceptional situations. And in such exceptional cases its boundaries are as expansive as the need to achieve equity and justice.
>
> [DEG, 198 N.J. at 269-70 (alteration in original) (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)).]

Here, the court correctly determined that plaintiff failed to demonstrate entitlement to relief under Rule 4:50-1(e) or (f). There was no significant change in circumstances since the entry of the March 1, 2013 and January 28, 2014 orders. Plaintiff remained involved with the judicial system on Krol status, was under the supervision and control of the State, and was living in an apartment provided by her supervised program with the State meeting her day-to-day needs. Plaintiff also failed to show that the denial of her motion to vacate the orders and reinstate alimony would result in extreme and unexpected hardship, or that the circumstances were exceptional and enforcement of the orders would be unjust, oppressive or inequitable. As the court found, plaintiff provided no CIS or financial documentation showing her need for alimony at

14

the time of her motion to vacate, nor did she provide evidence that her financial needs were not being met.

We have considered plaintiff's contentions on appeal in light of the record and applicable legal principles and conclude they are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). We affirm substantially for the reasons the court expressed in its February 2, 2018 statement of reasons. Plaintiff may re-apply for reinstatement of alimony in the event she is released from Krol status and is no longer under the State's supervision and control, and defendant may re-apply to terminate or reduce his alimony obligation. We express no view on the merits of such applications.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3156-17T2