**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3403-24

MMG INVESTMENTS III, LLC,

     Plaintiff-Appellant,

v.

527 ALMONESSON, LLC,
PRECISION DRYWALL SERVICES,
LLC, JOSHUA R. STRAX, JAMES
BRUGGEWORTH, and TOBY C.
SHIAVO,

     Defendants-Respondents.

_____

        Argued May 12, 2026 – Decided May 28, 2026

        Before Judges Gilson and Perez Friscia.

        On appeal from the Superior Court of New Jersey, Chancery Division, Camden County, Docket No. F-010668-22.

        Alana R. Bartley (Drake Loeb PLLC) argued the cause for appellant (Alana R. Bartley and Michael D'Angelo (Drake Loeb PLLC), on the briefs).

Paul J. Winterhalter argued the cause for respondent 527 Almonesson, LLC (Offit Kurman, PA, attorneys; Paul J. Winterhalter, on the brief).

PER CURIAM

In this commercial foreclosure action, Plaintiff MMG REO III, LLC[1] (MMG REO) appeals from the May 23, 2025 Chancery Division order granting defendant 527 Almonesson, LLC's (Almonesson) motion to vacate the final judgment entered on February 8, 2024 pursuant to Rule 4:50-1(f). Having reviewed the record, parties' arguments, and applicable law, we affirm.

I.

This foreclosure action involves two commercial loans that Sovereign Bank, N.A. (Sovereign) issued to two separate corporations. Sovereign issued co-defendant Precision Drywall Service, LLC (Precision) a loan in December 2011, and thereafter provided Almonesson a loan in January 2012. Co-defendant Joshua R. Strax was a member of both corporations.

The Sovereign loan to Precision was for $300,000 and memorialized by a promissory note. Precision also executed a business loan agreement and a commercial security agreement, which was perfected by a filed UCC-1

---

[1] Plaintiff MMG REO III, LLC was assigned the subject loans from MMG Investments III, LLC (MMG Investments), a successor-in-interest to the original lender.

financing statement. Additionally, Strax and co-defendant James Bruggeworth, another member of Precision, executed personal guaranties in connection with the note.

Sovereign loaned Almonesson $110,000, which was memorialized by a promissory note. The same day, to secure the note, Almonesson executed a mortgage in favor of Sovereign, encumbering a property at 527 Almonesson Road, Blackwood, New Jersey (the property). Almonesson's members included Strax, co-defendant Toby C. Shiavo, and Michael Niessner. Strax and Shiavo each personally guaranteed the repayment of the note.

In 2013, Sovereign became Santander Bank (Santander). In 2017, Almonesson entered into a loan modification agreement with Santander. Thereafter, in 2021, Santander assigned its rights, title, and interest regarding Almonesson's loan to CL45 MW Loan 1, LLC (CL45). In June 2022, CL45 assigned MMG Investments all rights, title, and interest in Almonesson's note and mortgage, Strax's and Shiavo's personal guarantees, and related loan documents.

On October 5, 2022, MMG Investments filed a foreclosure complaint against Almonesson, Precision, Strax, and Bruggeworth. In December 2022, Almonesson, Precision, and Strax filed an answer. Afterwards, Bruggeworth

filed a non-contesting answer. On February 17, 2023, MMG Investments filed an amended foreclosure complaint, adding Shiavo, who thereafter failed to file an answer. On April 28, 2024 MMG Investments filed a motion for summary judgment against Almonesson, Precision, and Strax to enforce Almonesson's lost promissory note dated January 20, 2012.[2]

In support of summary judgment, MMG Investments argued that foreclosure against the property as to Almonesson was warranted because it had executed a mortgage to secure its loan and had "cross-collateralized" Precision's loan. Because Precision had defaulted on its loan, which Almonesson had allegedly cross-collateralized, MMG Investments asserted the property was subject to foreclosure. MMG Investments submitted a certification from Julie A. Tumia, an "[a]uthorized [r]epresentative" familiar with the records, in support of its motion.

MMG Investments argued that the Almonesson loan documents "explicitly" provided for cross-collateralization of the Precision loan, citing Almonesson's January 2012 note and May 2017 modification note. The notes both state:

---

[2] While the record indicates the original promissory note was lost, the legitimacy of the note and its contents were undisputed.

As security for the prompt payment as and when due of all amounts due under this Note, including any renewals, extensions[,] and/or modifications thereof, together with all other existing and future liabilities and obligations of the Borrower and any endorsers, sureties[,] or guarantors (hereinafter "Obligor[s]"), to Lender, whether absolute or contingent, of any nature whatsoever and out of whatever transactions arising (hereinafter collectively referred to as the "Obligations"), in addition to any other security agreement or document granting Lender any rights in any of Obligor's property for the purpose of securing the Obligations, Obligor hereby grants to Lender a lien and security interest in and to all property of Obligor, or any of them, which at any time Lender shall have in its possession, or which is in transit to it, including without limitation any balance or share belonging to Obligor, or Lender and any other amounts which may be owing from time to time by Lender to Obligor, or any of them. Said lien and security interest shall be independent of any right of set-off which Lender may have. Such right of set-off shall be deemed to occur at the time Lender first restricts access of Obligor to property in Lender's possession, although such set-off may be entered upon Lender's books and records at a later time.

Additionally, MMG Investments referenced Almonesson's mortgage in support of cross-collateralization, which provides:

The within Mortgage also secures any and all extensions, renewals[,] and modifications of the Note, this Mortgage or any other Loan Documents including without limitation, any and all notes given in renewal of, substitution for, or in modification of the Note which is secured by this Mortgage. Modification means a change in the interest rate, due date, or other terms

5

and conditions of the Debt. If the parties to this Mortgage agree to a change which is a modification as defined in L. 1991, c. 364, this shall be subject to the priority provisions of the law. Advances made pursuant to the agreement secured by this Mortgage shall be "modifications" as defined in L. 1991, c. 364, and the priority of this Mortgage shall be subject to that law.

Tumia's certification highlighted the language of Almonesson's loan documents, which provided that if Almonesson failed to make "any payment of principal, interest, tax escrow[,] or any other payment due . . . , such failure . . . [would] constitute an event of default." She alleged that all of Precision's "loan documents . . . [we]re collateralized by" Almonesson's loan documents. Tumia therefore surmised Almonesson was responsible for the default amount that Precision owed on its loan and that the property mortgage secured Precision's debt.

Regarding the amounts owed "as of April 14, 2013," Tumia certified Almonesson owed on Precision's loan "$296,105.86 in principal[,]" "$65,622.41 in accrued and unpaid interest[,]" "$3,182.13 in late charges," and "per diem" interest. Tumia certified that Almonesson owed on its loan "$65,535.64 in principal, . . . $2,111.57 in accrued and unpaid interest[,]" "$375.40 in late charges[,]" and "per diem" interest. She further claimed that a "default under

6

the terms of the [l]oan [d]ocuments occurred on or about April 12, 2021, when . . . Strax, a guarantor of the[l]oan, defaulted on the Strax [g]uaranty."

On June 23, 2023, after argument, the court entered an order granting the motion for summary judgment and striking the answer filed by Almonesson, Precision, and Strax.[3]  On January 10, 2024, MMG Investments moved for final judgment.  On February 5, 2024, the Office of Foreclosure (OOF) issued a denial of final judgment because the application was "[m]issing [the] mortgage for [the] $300[,000] note signed by Precision" and "[a] guarantee by . . . Almonesson . . . cross-collateralizing the note."  MMG Investments' counsel filed a certification with the OOF, advising that the court had granted summary judgment finding the Almonesson loan documents expressly cross-collateralized the Precision loan.

On February 8, 2024, the OOF issued the final judgment against defendants for the aggregate sum of $460,797.10, which represented the combined default amount owed for both the Almonesson and Precision loans, and cross-collateralized the lien against Almonesson's mortgaged property.

---

[3] We note the court's order granting summary judgment was accompanied by an oral decision, but we have not been provided a copy of the transcript.  See Rule 2:6-1(a)(1)(I) (stating the appendix must contain parts of the record "essential to the proper consideration of the issues").

A-3403-24

Almonesson did not move for reconsideration or file an appeal of the final judgment. In March 2024, MMG Investments assigned MMG REO the judgments entered against defendants.

MMG Investments also filed a Law Division action against defendants to recover the loan amounts owed. On June 17, 2024, the Law Division entered a final judgment by default against Precision in the amount of $296,105.86 plus interest. In the same order, the Law Division separately entered a final judgment by default against Almonesson and Shiavo in the amount of $65,535.64 plus interest.

Thereafter, a sheriff's sale was scheduled in the foreclosure action for the sale of the property, which was stayed because Almonesson filed for Chapter 11 bankruptcy on September 3, 2024. See 11 U.S.C. 362(a)(2). Because Almonesson objected in the bankruptcy proceedings to MMG REO's filed "proof of claim," the bankruptcy judge held a hearing to address whether the property secured both loans.

On February 3, 2025, Almonesson moved before the court to vacate the final judgment of foreclosure entered on February 8, 2024, arguing it was erroneously entered. Strax certified, as a member of Almonesson, that it "did not guarant[ee]" nor "was [it] in any way involved with the loan arrangement

between Sovereign . . . and Precision." He further attested that Precision's loan "preceded the [m]ortgage [l]oan refinancing between . . . Almonesson and Sovereign." Strax asserted there was "absolutely no connection with the [l]oan given by Sovereign . . . to Precision," which operated "predominantly in . . . Virginia," and Almonesson's "business operations" in New Jersey. MMG REO opposed the motion.

On April 1, 2025, the bankruptcy judge denied Almonesson's objection to MMG REO's proof of claim without prejudice, determining it would await the chancery court's decision on Almonesson's foreclosure motion to vacate the final judgment. The bankruptcy judge noted Almonesson and its "members and equity interest holders[,] . . . Strax, Toby Shiavo, and . . . Niessner[,]" had "initially obtained a $110,000.00 loan in 2004 to purchase" the property. The bankruptcy judge found that in January 2012, Almonesson "re-financed the 2004 loan with a loan in the amount of $110,000.00 [that was] issued by Sovereign . . . , which was secured by a [m]ortgage on the [p]roperty" and that "Strax and Shiavo individually executed commercial guaranties."

Additionally, the bankruptcy judge determined that "Strax held an interest in a separate and distinct business entity[,] . . . Precision," which was "an entity owned by . . . Bruggeworth and . . . Strax." Regarding the timing of the loans,

the bankruptcy court noted that on December 12, 2011, prior "to . . . [Almonesson's] [l]oan, Sovereign . . . made a separate loan in the amount of $300,000.[] to Precision" and that "Bruggeworth and . . . Strax each provided a commercial guaranty." Thereafter, Precision "discontinued all business activity and liquidated its assets to pay creditors to the extent it was able in April 2019." The bankruptcy judge declined to rule on Almonesson's objection regarding MMG Investment's "amount of secured debt," finding collateral estoppel applied and the parties "must pursue their various arguments and seek relief from the state court."

On May 9, 2025, the court heard Almonesson's motion to vacate the final judgment. Almonesson argued equity demanded vacating the final judgment because there "was no basis . . . in law or in fact for" a judgment in the "full amount[ of] $460,000" to be entered against it. Almonesson highlighted that the mortgage's specific language states that the property "is a collateral pledge to secure the $110,000 loan by the mortgagee, in this case the bank, to the mortgagor, which is" Almonesson and "the mortgage does not extend to any other party." It argued MMG REO was only entitled to "the balance of the mortgage plus all the accrued interest solely on the [Almonesson] loan" and not the amount owed on the Precision loan.

On May 23, 2025, the court rendered an oral decision accompanied by an order vacating the final judgment as to Almonesson. The court found equity required vacating the final judgment after further review of the relevant loan documents because it had clearly made a mistake. The court highlighted that different parties were on the loan documents. While Almonesson had delayed filing its motion, the court noted the bankruptcy proceeding and found equity mandated setting aside the final judgment because Almonesson and other parties had not signed a guaranty and mortgage for Precision; thus, forcing their liability was unjust.

On appeal, MMG REO contends the court erroneously vacated the February 8, 2024 final judgment because: granting Almonesson's late motion was an abuse of discretion; partially vacating the final judgment as to Almonesson created ambiguity and prejudice to MMG REO's lien and the uncontested liability of co-defendants; the court had correctly decided the cross-collateralization issue in granting summary judgment; and the Law Division's judgment was not a relevant consideration because it was an in personam action, having no preclusive or limiting effect on the final judgment of foreclosure.

A-3403-24

II.

In an action to foreclose a mortgage, the only material issues "are the validity of the mortgage, the amount of the indebtedness, and the right of the mortgagee to resort to the mortgaged premises." N.Y. Mortg. Tr. 2005-3 Mortg.-Backed Notes, U.S. Bank Nat'l Ass'n as Tr. v. Deely, 466 N.J. Super. 387, 397 (App. Div. 2021) (quoting Invs. Bank v. Torres, 457 N.J. Super. 53, 65 (App. Div. 2018), aff'd and modified, 243 N.J. 25 (2020)). "[T]o show standing . . . in a foreclosure action, the plaintiff must show that it is the holder of the note and the mortgage at the time the complaint was filed." Deutsche Bank Nat'l Tr. Co. v. Mitchell, 422 N.J. Super. 214, 224-25 (App. Div. 2011) (quoting In re Foreclosure Cases, 521 F. Supp. 2d 650, 653 (S.D. Ohio 2007)).

We review a motion to vacate a final judgment under Rule 4:50-1 for an abuse of discretion. 257-261 20th Ave. v. Roberto, 259 N.J. 417, 436 (2025). "'The trial court's determination under [Rule 4:50-1] warrants substantial deference,' and the abuse of discretion must be clear to warrant reversal." Deutsche Bank Nat'l Tr. Co. v. Russo, 429 N.J. Super. 91, 98 (App. Div. 2012) (quoting US Bank Nat.l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012)). "A court abuses its discretion 'when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible

basis.'" Parke Bank v. Voorhees Diner Corp., 480 N.J. Super. 254, 262 (App. Div. 2024) (quoting Mims v. City of Gloucester, 479 N.J. Super. 1, 5 (App. Div. 2024)).

Rule 4:50-1 is "designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Mancini v. EDS ex rel. N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993) (quoting Baumann v. Marinaro, 95 N.J. 380, 392 (1984)). "Rule 4:50-1[(a) to (f)] provides for relief from a judgment [or order] in six enumerated circumstances." D.M.C. v. K.H.G., 471 N.J. Super. 10, 26 (App. Div. 2022) (quoting In re Est. of Schifftner, 385 N.J. Super. 37, 41 (App. Div. 2006)). "[T]he rule is a carefully crafted vehicle intended to underscore the need for repose while achieving a just result." Ibid. (quoting DEG, LLC v. Township of Fairfield, 198 N.J. 242, 261 (2009)). It is well established "a [trial] court should have authority under it to reopen a judgment where such relief is necessary to achieve a fair and just result." Manning Eng'g, Inc. v. Hudson Cnty. Park Comm., 74 N.J. 113, 122 (1977).

Rule 4:50-1(f) is a "catch-all" provision incapable of categorization. DEG, LLC, 198 N.J. at 2670. It allows for relief in "exceptional situations"

13

where hardship has been shown and, as such, its "boundaries 'are as expansive as the need to achieve equity and justice.'"  Roberto, 259 N.J. at 436 (quoting Hous. Auth. of Morristown v. Little, 135 N.J. 274, 290 (1994)); see also Guillaume, 209 N.J. at 484.  In reviewing a Rule 4:50-1(f) motion, a trial court should "consider all relevant facts presented in support of the alleged exceptional circumstances, weighed against the resulting detriment to the non-moving party."  257-261 20th Ave. Realty, LLC v. Roberto, 477 N.J. Super. 339, 367 (App. Div. 2023) aff'd as modified 259 N.J. at 417.  "[T]o establish the right to such relief, it must be shown that enforcement of the order or judgment would be unjust, oppressive or inequitable."  Harrington v. Harrington, 281 N.J. Super. 39, 48 (App. Div. 1995).  "Rule [4:50-1(f)] is limited to 'situations in which, were it not applied, a grave injustice would occur.'"  Guillaume, 209 N.J. at 484 (quoting Hous. Auth. of Morristown, 135 N.J. at 289).

### III.

We first address MMG REO's contentions that the court abused its discretion in vacating the final judgment pursuant to Rule 4:50-1(f) and that granting Almonesson's motion created ambiguity and prejudice regarding its liens.  MMG REO argues the court's acknowledged error should not have been reviewable through a motion to vacate as doing so subverts finality and there

14

were no exceptional circumstances. Further, MMG REO asserts vacating final judgment "improperly leaves . . . [it] in a procedural limbo where there is an undisturbed [f]inal [j]udgment." Having reviewed the record, we conclude these contentions lack merit.

As the court correctly recognized, a substantive injustice would occur if the final judgment was not vacated because members of Almonesson had not guaranteed Precision's loan and, therefore, should not be held responsible for it. The court was within its authority to review the motion to vacate and remedy its clear error because MMG Investment's reliance on the Almonesson loan documents to establish cross-collateralization was patently erroneous. "[I]n . . . exceptional cases . . . [Rule 4:50-1(f)'s] boundaries are as expansive as the need to achieve equity and justice." Mancini, 132 N.J. at 336 (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)). While mindful of the strong interest in finality, the court found the injustice to Almonesson and its members compelled vacating the judgment. We are convinced the court did not abuse its discretion in determining the error warranted "afford[ing] relief in [this] exceptional situation[]." Hodgson v. Applegate, 31 N.J. 29, 41 (1959).

We also reject MMG REO's assertion that vacating the final judgment as to Almonesson created procedural uncertainty and prejudice warranting

15

reversal. MMG REO is not prohibited from seeking to amend and correct the final judgment to comport with the court's ruling. Moreover, we discern no undue prejudice as MMG REO remains entitled to the default remedies afforded under the respective loan documents. We note MMG Investments obtained from the Law Division a final judgment by default for the amounts owed on the separate loans. Thus, MMG REO's argument of alleged prejudice, because it is now prevented from collecting more than the Almonesson loan documents provided, is unpersuasive.

We next address MMG REO's penultimate argument that the court had "correctly found [on summary judgment] the cross-collateralization agreement clear and enforceable." MMG REO argues "[t]he express cross-collateralization provision of the Almonesson [n]ote and the [m]odification [n]ote does not limit the collateral to the" respective notes. MMG REO also asserts the language in the notes "affirmatively expand[s] the scope of the existing debt secured by the . . . Almonesson [m]ortgage." We disagree.

Dispositively, the language of the mortgage provides Almonesson secured the $110,000 loan given "by Mortgagee to Mortgagor [(Almonesson)], or which the Mortgagor has guaranteed, . . . and represented by a Note, . . . as well as any and all other indebtedness of the Mortgagor to the Mortgagee, whether now

existing or hereafter arising." The mortgage does not secure—or serve as cross-collateral for—the earlier Precision loan. Further, the note states in pertinent part, "Obligor hereby grants to Lender a lien and security interest in and to all property of Obligor." Relevant to the court's determination, Almonesson is a separate entity from Precision, and two of Almonesson's members, Shiavo and Niessner, have no interest in Precision. Only Strax had personally, but separately, guaranteed both loans. Additionally, simply because Strax entered personal guarantees for both loans does not equate to binding Almonesson to cross-collateralizing the Precision loans. Accordingly, a review of the loan documents supports the court's determination that it erred in entering the final judgment after finding the Almonesson's loan documents supported cross-collateralization.

For these reasons, we discern no error in the court's order vacating final judgment. Summary judgment should not have been entered originally against Almonesson because the court "should not have . . . cross-collateralized [the] loans" given "they were different parties . . . named . . . on different loans." The court also properly found it had made "a mistake" and that based on equity, it could "vacate [its] prior order" because it "would be . . . fundamentally unfair to [the] parties who did not guarantee" the Precision loan. Thus, the court's

A-3403-24

decision to vacate the final judgment after correctly analyzing the loan documents and determining Almonesson did not cross-collateralize Precision's loan is supported by the record.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division