928 A.2d 948 (2007)
395 N.J. Super. 380
Danna GOLDHABER and Richard Goldhaber, Plaintiffs-Respondents,
v.
Charles KOHLENBERG, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued January 31, 2007.
Decided August 2, 2007.
*949 Noel E. Schablik, Parsippany, argued the cause for appellant (Mr. Schablik, attorney and on the brief; Joseph P. Kreoll, on the brief).
Jason A. Storipan, Lawrenceville, argued the cause for respondent (Stark & Stark, attorneys; Paul W. Norris, of counsel and on the brief; Mr. Storipan, on the brief).
Before Judges WEFING, PARKER and YANNOTTI.
The opinion of the court was delivered by
WEFING, P.J.A.D.
In this appeal, we are called upon to consider principles of long-arm jurisdiction in the context of Internet activity. Plaintiffs, New Jersey residents, sued defendant, a California resident, for libel, based upon postings he made to an Internet newsgroup. Plaintiffs obtained a default *950 judgment awarding them compensatory damages of $2,644.11 and punitive damages of $1,000,000. The trial court denied defendant's motion to vacate that default judgment. After reviewing the record in light of the contentions advanced on appeal, we affirm in part, reverse in part, and remand for further proceedings.
Plaintiffs, who are father and daughter, reside in New Jersey. Defendant resides in California; he has no contacts of any type with New Jersey. In 1999, plaintiff Richard Goldhaber joined an Internet newsgroup devoted to information concerning cruises and cruise ships; plaintiff Danna Goldhaber joined the group in 2002. Defendant is a member of the same group. Plaintiffs alleged that, commencing in January 2003, defendant began to post on this newsgroup a series of messages that were extremely derogatory about plaintiffs. These messages accused plaintiffs of base activities, including incest and bestiality. Some of the messages contained cruel references to the hearing limitations of plaintiff Danna Goldhaber. We decline to set forth in the body of this opinion examples of these vile messages because doing so would serve no purpose. The record contains no explanation of what motivated defendant to act in such a manner if, indeed, he did so.
Plaintiffs filed a one-count complaint seeking damages for libel. After plaintiffs attempted to serve defendant in California, defendant, according to his certification, consulted with counsel in California who advised him that New Jersey did not have jurisdiction over him. Based upon that, defendant did not respond to plaintiff's suit, and default was entered against him and, subsequently, the default judgment at issue on appeal. Defendant then retained New Jersey counsel who filed a motion to set aside that default judgment. Defendant appeals from the court's order denying his motion.

I
Defendant presents a number of arguments on appeal. His principal contention, however, is that he is not subject to jurisdiction in New Jersey. The topic of long-arm jurisdiction premised upon use of the Internet has generated a number of comments. Patrick J. Borchers, Symposium: Personal Jurisdiction in the Internet Age: Internet Libel: The Consequences of a Non-Rule Approach to Personal Jurisdiction, 98 Nw. U.L.Rev. 473 (2004); Dennis T. Yokoyama, You Can't Always Use the Zippo Code: The Fallacy of a Uniform Theory of Internet Personal Jurisdiction, 54 DePaul L.Rev. 1147 (2005); Rachael T. Krueger, Traditional Notions of Fair Play and Substantial Justice Lost in Cyberspace: Personal Jurisdiction and On-Line Defamatory Statements, 51 Cath. U.L.Rev. 301 (2001).
Our Supreme Court addressed the question of long-arm jurisdiction in the context of communications over the Internet in Blakey v. Continental Airlines, 164 N.J. 38, 751 A.2d 538 (2000). Plaintiff in that case, a female pilot who worked for Continental Airlines, sued her employer, alleging workplace discrimination in violation of Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. § 2000e et seq. A number of Continental male pilots, in response to Blakey's suit, published on an on-line computer bulletin board used by Continental pilots a series of messages about her that she viewed as harassing, false and defamatory. Blakey, supra, 164 N.J. at 48, 751 A.2d 538.
This on-line bulletin board was called the Crew Members Forum. It was not maintained by Continental but was made available to Continental employees by CompuServe, an Internet service provider, *951 as part of Continental's company-wide computer network. Id. at 48-49, 751 A.2d 538.
Blakey amended her lawsuit to contend that Continental had a duty to monitor the usage of this on-line bulletin board by its employees and was thus responsible for the defamatory messages posted about her; she also joined as defendants the offending pilots, contending that they had libeled her in these on-line messages. The individual pilots moved to have her claims against them dismissed, contending that as non-residents with no contacts with New Jersey, New Jersey had no jurisdiction over them. In taking up that issue, the Court ultimately concluded that the record did not contain sufficient information to determine whether New Jersey did, indeed, have jurisdiction over these pilots based upon their postings to this on-line bulletin board. Specifically, the Court noted that there was no evidence in the record whether these pilots knew that Blakey was pursuing her law suit in New Jersey, as opposed to any other forum (Blakey herself did not reside in New Jersey and no longer flew out of Continental's Newark terminal) and whether they knew that their messages would be published in New Jersey. Id. at 70, 751 A.2d 538. The Court, therefore, remanded for discovery on those jurisdictional issues.
Significantly, in approaching the question, the Court declined to adopt new principles to analyze the fundamental concept of long-arm jurisdiction in an Internet context. "Rather than to attempt to create a new order of jurisdictional analysis adapted to the Internet, we prefer in this case to adhere to the basics." Id. at 64, 751 A.2d 538. The Court summarized the principles underlying the fundamental concept of jurisdiction, holding that these same principles would govern resolution of the question before it.
[T]he test for "due process requires only that in order to subject a defendant to a judgment in personam, if he [or she] be not present within the territory of the forum, he [or she] have certain minimum contacts with it such that the maintenance of the suit does not offend `traditional notions of fair play and substantial justice.'" Those unchanging commands of due process govern every foray into the realm of long-arm jurisdiction over non-residents.
[Id. at 66, 751 A.2d 538 (citations omitted).]
"The question is whether `the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.'" Id. at 67, 751 A.2d 538 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 (1980)). "An intentional act calculated to create an actionable event in a forum state will give that state jurisdiction over the actor." Id. at 67, 751 A.2d 538 (quoting Waste Management, Inc. v. Admiral Ins. Co., 138 N.J. 106, 126, 649 A.2d 379 (1994), cert. denied sub nom WMX Tech., Inc. v. Canadian Gen. Ins. Co., 513 U.S. 1183, 115 S.Ct. 1175, 130 L.Ed.2d 1128 (1995)). The Court held that "it would be fair to posit jurisdiction where the effects of the harassment were expected or intended to be felt." Id. at 69-70, 751 A.2d 538. Based upon the deficiencies in the record to which we have referred, the Court remanded for further discovery.
In our judgment, Blakey, although instructive, is not determinative of the results in this appeal in light of the differences in the nature of the site upon which the Continental pilots posted their messages (accessible only to other Continental pilots) and the particular site before us. The on-line bulletin board involved in Blakey was accessible only to other Continental *952 pilots and was part of a "closed" network. The parties have variously referred to the site in question as a listserve and a newsgroup. The distinction between the two is not material to our analysis.[1] It is undisputed that postings to the site were not monitored by a moderator either for relevance or content.
Courts in other jurisdictions, when confronted with jurisdictional questions in the context of posting messages upon such a listserve or newsgroup, have concluded that the mere posting of messages upon such an open forum by a resident of one state that could be read in a second state was not sufficient to confer jurisdiction upon the latter. Griffis v. Luban, 646 N.W.2d 527 (Minn.2002), cert. denied, 538 U.S. 906, 123 S.Ct. 1483, 155 L.Ed.2d 225 (2003), illustrates the principle. Plaintiff Griffis was an Alabama resident who taught courses in Egyptology at the University of Alabama, and defendant Luban was a Minnesota resident with an interest in Egyptology. The two had a disagreement on Egyptology, and Luban posted a series of messages on an on-line newsgroup, sci.archeology, that disparaged the credentials of Griffis. Griffis sued Luban in Alabama for defamation and recovered a default judgment, which she sought to enforce in Minnesota. The Minnesota court, however, declined to enforce the judgment, holding that the Alabama court did not have personal jurisdiction over Luban. It concluded that there was no evidence that Luban "expressly aimed the allegedly tortious conduct at the forum such that the forum was the focal point of the tortious activity." Id. at 535. The court stated that "[t]he fact that messages posted to the newsgroup could have been read in Alabama, just as they could have been read anywhere in the world, cannot suffice to establish Alabama as the focal point of the defendant's conduct." Id. at 536.
Other courts have come to the same conclusion. Young v. New Haven Advocate, 315 F.3d 256 (4th Cir.2002), cert. denied, 538 U.S. 1035, 123 S.Ct. 2092, 155 L.Ed.2d 1065 (2003); Bible and Gospel Trust v. Wyman, 354 F.Supp.2d 1025 (D.Minn.2005); Medinah Mining, Inc. v. Amunategui, 237 F.Supp.2d 1132 (D.Nev. 2002); Burleson v. Toback, 391 F.Supp.2d 401 (M.D.N.C.2005); Barrett v. Catacombs Press, 44 F.Supp.2d 717 (E.D.Pa.1999); Novak v. Benn, 896 So.2d 513 (Ala.Civ. App.2004).
A Virginia district court did find jurisdiction in such a factual complex. Bochan v. La Fontaine, 68 F.Supp.2d 692 (E.D.Va. 1999). The court agreed with the plaintiff that jurisdiction existed under Virginia's long-arm statute. It rested its conclusion as to defendants La Fontaine, residents of Texas, on the fact that their on-line postings passed through server hardware located in Virginia. Id. at 699. As to defendant Harris, a resident of New Mexico, the court relied upon the fact that he solicited business in Virginia through a website accessible to Virginia residents promoting his computer hardware company. Id. at 701-02. The court found no violation of due process in such exercise. Id. at 702. *953 We do not find the approach adopted in Bochan applicable here.
Those courts that have declined to find jurisdiction upon the basis of mere posting of messages upon an open on-line forum have done so either on the basis that there was insufficient evidence that the alleged tortfeasor had directed or focused the defamatory comments to the forum state or on the basis that the site in question was passive, as opposed to active or interactive. Consideration of whether the defamatory comments were directed or focused to the forum state has been described as a "targeting-based" analysis. Michael A. Geist, Is There a There There? Toward Greater Certainty for Internet Jurisdiction, 16 Berkeley Tech. L.J. 1345, 1353 (2001) (noting the undesirable consequences that can flow from an analysis that rests upon whether the site in question is characterized as active or passive. "If the target is unable to sue locally due to a strict adherence to the passive versus active test, the law might be seen as encouraging online defamatory speech by creating a jurisdictional hurdle to launching a legal claim." Id. at 1377).
In Blakey, supra, our Supreme Court, by determining that jurisdiction may be posited based upon where the effects of the harassment "were expected or intended to be felt," implicitly adopted the "effects" test enunciated by the United States Supreme Court in Calder v. Jones, 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984). 164 N.J. at 70, 751 A.2d 538. That case was a defamation action commenced in California by the entertainer Shirley Jones against the National Enquirer, a publication headquartered in Florida. She joined as defendants the author and editor of the article, who also were Florida residents. They sought dismissal of the suit, maintaining they did not have sufficient minimum contacts with California to justify that State exercising in personam jurisdiction over them. The Supreme Court rejected their arguments. Writing for a unanimous Court, Chief Justice Rehnquist stated:
Petitioner[s] wrote and . . . edited an article that they knew would have a potentially devastating impact upon respondent. And they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the National Enquirer has its largest circulation. Under the circumstances, petitioners must "reasonably anticipate being haled into court there" to answer for the truth of the statements made in the article. An individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury.
[Calder, supra, 465 U.S. at 789-90, 104 S.Ct. at 1487, 79 L.Ed.2d at 812.]
Here, as opposed to the cases cited earlier, there is, in our judgment, evidence that the author of these messages did, indeed, target them to New Jersey. The author not only knew that plaintiffs resided in New Jersey, he knew the municipality in which they resided and made specific disparaging references to that municipality in many of his postings. Certain of his postings were made in response to plaintiffs' replies to the offending comments. He also made insulting comments about that municipality's police department. In addition, he referred to plaintiffs' neighbors in the apartment complex in which they resided and at one point even posted their address. Conduct of that nature and its connection to New Jersey "are such that [defendant] should reasonably [have] anticipate[d] being haled into court" here. World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 567, 62 L.Ed.2d 490, 501 *954 (1980). Indeed, we would deem it against the policy of our courts to deny these plaintiffs a forum in which to seek redress. We thus affirm the determination of the trial court that New Jersey could exercise in personam jurisdiction over defendant.

II
We turn now to defendant's remaining contentions.

A.
Defendant challenges the sufficiency of service of process on two grounds: that plaintiff failed to file an affidavit of diligent inquiry and that service itself was deficient. The trial court did not deal in its written opinion with these arguments. Defendant maintains that plaintiffs' failure to file an affidavit of diligent inquiry in connection with their attempt to serve him personally in the State of California renders the default judgment void. We are unable to agree, particularly in the context of this action in which defendant maintains in his jurisdictional argument that he has absolutely no contacts with New Jersey. Presumably, an affidavit of diligent inquiry would only have supported that position. "[D]efault judgments will not be vacated for minor flaws in the service of process." Sobel v. Long Island Entertainment, 329 N.J.Super. 285, 292, 747 A.2d 796 (App.Div.2000). The underlying purpose to an affidavit of diligent inquiry is to establish the impossibility of serving the defendant in this state. There is no dispute here as to that fact.
Defendant also challenges the manner in which process was served. Specifically, he certified that on the day stated in the return of process, he was in the State of Nevada. He further stated only he and his wife live at his California residence and that her physical description does not comport with that provided by the process server of the individual with whom he left the summons and complaint. There is, however, no dispute that service was achieved at defendant's California address and that the papers were promptly delivered to him. "[D]elivery of a summons and complaint to someone at the defendant's home who transmits them to the defendant in a timely fashion will be treated as valid service of process even if the recipient of the process was not a member of defendant's household." Ibid.

B
A defendant seeking to set aside a default judgment must establish that his failure to answer was due to excusable neglect and that he has a meritorious defense.[2] Defendant submitted a certification in support of his motion, in which he stated that upon learning of plaintiffs' New Jersey action, he consulted with a California attorney who advised him that New Jersey did not have jurisdiction over him, and that, as a consequence, he need take no steps to defend himself. This, according to the trial court, was insufficient to establish excusable neglect. We are unable to agree.
In Court Invest. Co. v. Perillo, 48 N.J. 334, 225 A.2d 352 (1966), the Court found excusable neglect when defendants had relied upon the word of their then-attorney that he had properly attended to matters to resolve a title question affecting *955 their property when, in fact, he had done nothing. Here, defendant sought the advice of counsel as to the best method of proceeding. One can question the soundness of the advice here, but the record provides no basis to dispute that defendant acted in reliance upon it.
Because the trial court here found no excusable neglect, it did not find it necessary to address the question of a meritorious defense. Our review of the record before us on this aspect is guided by our Supreme Court's statement that "[T]he opening of default judgments should be viewed with great liberality, and every reasonable ground for indulgence is tolerated to the end that a just result is reached." Housing Authority of Town of Morristown v. Little, 135 N.J. 274, 283-84, 639 A.2d 286 (1994) (quoting Marder v. Realty Constr. Co., 84 N.J.Super. 313, 318-19, 202 A.2d 175 (App.Div.), aff'd, 43 N.J. 508, 205 A.2d 744 (1964)). Viewed in this light, the record in our judgment supports a finding that defendant did put forth a meritorious defense. In his certification in support of his motion to vacate the default judgment, defendant referred to a prior suit he had filed in California against these plaintiffs, in which he asserted that they were falsely accusing him of posting defamatory messages about them. If defendant can establish he did not post the offending messages, it would constitute a defense.

C
We also reject defendant's contention that plaintiffs are judicially estopped from challenging whether New Jersey has jurisdiction over him. At one point, plaintiff Danna Goldhaber felt threatened by messages that she understood defendant to have posted about her, and she sought protection from her local police department. Defendant responded by filing suit in California, alleging that she had filed a false police report and criminal complaint against him and that her father had conspired to assist her. Plaintiffs sought to dismiss the California action on the basis that California had no jurisdiction over them. Their action in doing so, defendant contends, estops them from contesting his argument that New Jersey does not have jurisdiction over him. Judicial estoppel is inapplicable, however, because the California courts never ruled upon plaintiffs' motion, defendant having voluntarily dismissed his California action. Ali v. Rutgers, 166 N.J. 280, 288, 765 A.2d 714 (2000); Kinsella v. NYT Television, 382 N.J.Super. 102, 112, 887 A.2d 1144 (App. Div.2005).

D
Because we are satisfied that the default judgment must be set aside and the matter proceed on its merits, it is not necessary to address defendant's contention that the award of punitive damages is excessive. We merely note that the award does not appear to comply with the terms of the Punitive Damages Act, N.J.S.A. 2A:15-5.9 to -5.17.
We affirm the determination of the trial court that New Jersey has jurisdiction to adjudicate plaintiffs' allegation that defendant has libeled them. We reverse the trial court's determination denying defendant's application to set aside the default judgment entered against him.
Affirmed in part, reversed in part, and remanded for further proceedings. We do not retain jurisdiction.
NOTES
[1] The development of the Internet, and the distinctions in the various methods of communicating upon it, such as listserves and newsgroups, are described in American Civil Liberties Union v. Reno, 929 F.Supp. 824, 830-38 (E.D.Pa.1996), aff'd, 521 U.S. 844, 117 S.Ct. 2329, 138 L.Ed.2d 874 (1997). The court notes in its opinion that the "Internet is not a physical or tangible entity, but rather a giant network which interconnects innumerable smaller groups of linked computer networks." 929 F.Supp. at 830. The difficulty in analyzing jurisdiction in Internet-related matters "is that the Internet enables users to make contact with all states simultaneously." No Bad Puns: A Different Approach to the Problem of Personal Jurisdiction, 116 Harv. L.Rev. 1821, 1822 (2003).
[2] Defendant's motion to set aside the default judgment entered against him did not specify under which portion of R. 4:50-1 the motion was brought. In his brief on appeal, defendant does not dispute, however, that if we reject his argument that service of process was defective and void, he must establish excusable neglect in order to have the default judgment set aside.