**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1891-21

GARDEN STATE COMMERCIAL
SERVICES, LLC,

     Plaintiff-Respondent,

v.

PIETRO CUCARO,

     Defendant-Appellant.

_____

Submitted February 1, 2023 – Decided November 15, 2023

Before Judges Gooden Brown and DeAlmeida.

On appeal from the Superior Court of New Jersey, Chancery Division, Middlesex County, Docket No. C-000117-18.

Debra Mae S. Johnson, attorney for appellant.

Donnelly Minter & Kelly LLC, attorneys for respondent (Jason Andrew Meisner, of counsel and on the brief; Joseph P. Fiteni, on the brief).

The opinion of the court was delivered by

DeALMEIDA, J.A.D.

Defendant Pietro Cucaro appeals from two orders of the Chancery Division: (1) the December 17, 2021 order denying his motion to vacate a February 22, 2019 final judgment awarding damages to plaintiff Garden State Commercial Services, LLC (Garden State); and (2) the February 11, 2022 order denying his motion for reconsideration of the December 17, 2021 order. We affirm.

I.

According to Garden State, in March 2018, Cucaro, then represented by counsel, entered into a contract to sell two parcels of real property in South Plainfield to Garden State with a closing date of April 30, 2018. Cucaro represented that certain conditions at the property, including removal of debris, furniture, and vehicles would be remedied prior to the closing. In addition, Cucaro represented that some of the commercial tenants at the property would vacate or be evicted prior to the closing.

Cucaro failed to fulfill his promises prior to the closing date. As a result, Garden State was unable to move its business operations to the property, as intended. Garden State faced significant economic penalties and eviction for overstaying its lease at the place where it then operated its business.

2

On August 2, 2018, Garden State filed a complaint against Cucaro in the Chancery Division seeking specific performance of the contract. Garden State asked the court to enter an order compelling a closing, with Garden State being provided a credit and/or escrow to cover the damages it had incurred and expected to incur as a result of Cucaro's breach of the contract.

The trial court entered an order to show cause requiring Cucaro to appear and explain why the court should not compel specific performance of the contract. Cucaro failed to appear on the return date of the order to show cause.

On August 20, 2018, the trial court entered an order granting Garden State's request for relief. The court deemed service of the complaint and order to show cause with accompanying papers on Cucaro effective. In addition, the court ordered Cucaro to specifically perform the contract by: (1) taking all steps necessary to remove the tenants at the property; and (2) proceeding to closing without delay and with time being of the essence. The court also ordered that $100,000 of the sale proceeds be held in escrow pending its determination of the amount Garden State was to be paid out of escrow for its damages.

From August 2018 to December 2018, Cucaro failed to comply with the August 20, 2018 order. As a result, on January 9, 2019, Garden State filed a motion in aid of litigant's rights seeking an order relieving it of its obligations

under the contract, finding Cucaro breached the contract and is liable to Garden State for damages, and either awarding damages or setting a proof hearing on damages.

On February 7, 2019, the trial court entered an order granting Garden State's motion, relieving Garden State of its obligations under the contract, and finding Cucaro to have breached the contract. The court set a date for a hearing to determine the amount of damages to be awarded to Garden State.

Following a proof hearing at which Cucaro did not appear, on February 22, 2019, the trial court entered a judgment in favor of Garden State and against Cucaro for $175,511.30 in damages. From February 2019 to October 2021, Garden State unsuccessfully attempted to collect on the judgment.

On October 21, 2021, Cucaro, then self-represented, moved to vacate the February 22, 2019 judgment pursuant to R. 4:50-1. Cucaro argued that he "never entered into any agreement with [Garden State]" and that he "does not even know and would not be able to identify any of the principals associated with whatever transaction there may be, resulting in the initial lawsuit." He also stated that he was "never served" and "is the victim of a 'Fraudulent Scheme.'"

In opposition to the motion, Garden State's counsel submitted a certification in which he stated that after the trial court's entry of the order to

show cause, he attempted to negotiate a settlement of Garden State's claims, including the claims raised in the order to show cause, with Scott Telson, an attorney with the Lombardi law firm, who held himself out as representing Cucaro. After those negotiations failed, Telson informed Garden State's counsel in writing that he had resigned as Cucaro's counsel and requested that Garden State's counsel communicate directly with Cucaro from that point forward. Telson copied Cucaro on the letter at two addresses, one in Linden and one in Edison, as well as the Watchung address at which Garden State and its attorney sent numerous pleadings and correspondence to Cucaro.

On October 18, 2021, Winsome Y. Barnes, an attorney representing Cucaro, wrote to Steven A. Jayson, an attorney representing Garden State regarding the transaction. Barnes stated that she had represented Cucaro for over twenty-five years, including all of his real estate transactions, and was not aware of the sale of the property. Barnes stated, "I was pleasantly surprised to get mail addressed to Mr. Cucaro at my home." The address on Barnes's letterhead is the same Watchung address to which Garden State's counsel had sent numerous pleadings and correspondence addressed to Cucaro.

Barnes stated that the signature on the seller's line of the contract did not belong to Cucaro, that he had not retained a broker or anyone else to sell his

5

property, and that he was in and out of medical facilities from mid-2018 to early 2021, and could not have engaged in negotiations during that time. Barnes conceded, however, that Cucaro received legal correspondence regarding the transaction and subsequent litigation, which he discussed with his daughter:

> Mr. Cucaro is a 78-year-old with limited English language skills and he could not understand the reason for the receipt of correspondence from the lawyer's offices so at one point he inquired of his daughter Tina Cucaro and she told him "it was nothing."

Barnes also acknowledged that Cucaro was told by his daughter that Telson and the Lombardi firm had been retained to represent Cucaro to evict a tenant from the property in order to facilitate the sale of the property to someone named "Mohammed." Barnes further stated the email address appearing on some correspondence relating to the transaction and litigation did not belong to Cucaro and suggested that the sales contract had been signed by "N. Cucaro," which Barnes speculated was Nunziatina Cucaro, otherwise known as Tina Cucaro, defendant's daughter.

On December 14, 2021, a letter purporting to be from Pietro Cucaro was submitted to the court. Although Barnes had represented that Cucaro had limited facility with English, the letter was in grammatically correct English and addressed a number of legal concepts. The letterhead listed the Watchung

6

address that appeared on Barnes's letterhead and "Email: Lawbarnes@aol.com," the same email address that appeared on Barnes's letterhead. In the letter, Cucaro states that Barnes's Watchung address, the address to which Garden State's counsel had sent numerous pleadings and correspondence, "has been my residence and mailing address since June 2004." It is not clear why, in her October 18, 2021 letter, Barnes, stated "I was pleasantly surprised to get mail addressed to Mr. Cucaro at my home," if Barnes's home had been Cucaro's residence and mailing address since 2004.[1]

In addition, in the letter Cucaro states that the contract concerns two parcels, one of which is owned by Barnes. He argues that because Barnes did not sign the contract it was void. An accompanying certification by Barnes dated December 14, 2021, states, "I am the owner of" one of the parcels listed in the contract, having purchased it on January 16, 2014, and that she did not authorize the sale of that property.

In response to those submissions, Garden State submitted a quitclaim deed dated April 24, 2018, in which Barnes transferred her interest in the parcel at

---

[1] It was later revealed by Cucaro that Barnes is his spouse. This admission raises the question of whether Cucaro consulted Barnes, an attorney who stated that she represented Cucaro in all of his real estate transactions, when we received, as Barnes described it, "correspondence from lawyer's offices[,]" relating to the contract and ensuing litigation.

A-1891-21

issue to Cucaro, as well as a seller's residency certification/exemption signed by Barnes attesting to the transfer of the property to Cucaro in 2018.

Garden State also submitted a proposed consent order sent to its counsel by Telson on August 28, 2018. The proposed consent order, which purports to resolve the issues addressed in the trial court's August 20, 2018 order, is signed by Telson as "[a]ttorneys for Defendant, Pietro Cucaro" and is signed by both Cucaro and Tina Cucaro.

On December 17, 2021, the trial court entered an order denying Cucaro's motion for relief pursuant to R. 4:50-1(a). In an oral opinion, the court found no evidence of excusable neglect or a meritorious defense and concluded that the motion was untimely. The court rejected Cucaro's claim to have been unaware of the contract, Garden State's complaint, the August 20, 2018 order compelling specific performance, the request for the entry of damages, and the evidentiary hearing. The court noted the significant evidence in the record that Cucaro was represented by counsel who attempted to resolve the claims asserted by Garden State, including circulating a proposed consent order signed by Cucaro addressing the August 20, 2018 order.

The court found that Cucaro did not adequately explain his nearly three-year delay in moving to vacate the judgment. The court noted that Barnes,

Cucaro's spouse who is an attorney, in her October 18, 2021 letter, conceded that Cucaro had notice of correspondence from law firms regarding the contract and ensuing litigation and was told by his daughter, who is not an attorney, that he did not need to respond. Cucaro apparently elected to take his daughter's advice and not respond to legal correspondence.

The court also found that Cucaro produced no evidence, such as medical records, to support his alleged inability to respond to the complaint. Nor, the court observed, did Cucaro produce a certification from Telson stating that he did not represent Cucaro with respect to the contract and resulting litigation.

In addition, the court rejected Cucaro's argument that entry of the judgment was a mistake because Garden State should have sought specific performance, rather than damages. The court noted that Garden State did seek specific performance and its request was granted by the trial court. It was, the court found, Cucaro's persistent failure to comply with the August 20, 2018 order that resulted in Garden State's motion for entry of an award of damages in lieu of specific performance.

Notably, the court also found that Barnes's statement in her certification that she owns one of the parcels that is the subject of the contract was "demonstrably false." In addition, the court noted that the deed through which

Barnes transferred the property to Cucaro in April 2018, four months before Garden State filed its complaint, states that it should be delivered to Cucaro at a Linden address that is one of the addresses at which Garden State attempted to serve Cucaro with the complaint and order to show cause. In her letter, Barnes stated that Garden State's attempt to serve papers on Cucaro at the Linden address was "another cause for concern" because he had not operated a business there for several years. Yet, it is clear that Barnes signed a document using the Linden address for Cucaro at about the same time as the attempts at service.

A December 17, 2021 order memorializes the trial court's decision.

Cucaro subsequently retained counsel and moved for reconsideration of the December 17, 2021 order. The motion was supported by a certification from Cucaro denying that he had any involvement in the transaction, claiming to be unaware of Garden State's complaint and the August 20, 2018 order compelling specific performance, and providing further details with respect to his medical treatment. In addition, Cucaro filed a certification from his daughter. Nunziatina[2] certified that she has never had power of attorney to act on behalf of Cucaro and was never authorized to act as his agent. She further certified

---

[2] We refer to Nunziatina by her first name to avoid confusion because she shares a surname with defendant. We intend no disrespect.

that "sometime ago" she was approached by a realtor from Blau and Berg Company (Blau), an entity that appears on the sales contract. According to Nunziatina, Blau was acting on behalf of Garden State, which was interested in purchasing Cucaro's property. Despite her concession that she lacked authority to act on her father's behalf, Nunziatina certified that she "was excited about what I thought was a great deal. But in 10 days I would need to evict a tenant, and get everything ready for the sale."

Nunziatina certified that "[l]ater attorney Scott Telson from the Law Offices of Lombardi and Lombardi worked on the deal." She further certified that she "did not speak to [her] father about the transaction, assuming at some point he would be brought in anyway." She stated about Cucaro, "I hoped he would be pleased with my initiative." Nunziatina claimed never to have signed a retainer agreement with Telson and that she never told him that she had the authority to act on behalf of her father, who owned the property she was purporting to agree to sell.

Nunziatina admitted that "while at the Law Office of Lombardi and Lombardi, I signed a contract" for the sale of the property. She claimed that she "never pretend[ed] to be [her] [f]ather's agent" and "was never corrected or questioned by the attorney or the real estate agent," who, she claimed, knew they

needed Cucaro's approval but did not ask to speak to him or for his contact information. Nunziatina did not explain why she would sign a contract for the sale of real property that she did not own and for which she had no authority to act on behalf of the owner.

Nunziatina further certified that

> [m]any months later[,] Mr. Telson called with a list of things that I needed to repair and fix up on the [p]roperty. I thought this was supposed to be an "as is" agreement and just ignored these demands. He then just stopped calling me.
>
> . . . .
>
> To the best of my knowledge Mr. Telson only spoke to me concerning the real estate deal, never my [f]ather.
>
> . . . .
>
> I signed papers at the Lombardi office, not sure I ever signed a consent agreement. Mr. Telson never told me I was signing a consent agreement. My father was not present, he never visited the Lombardi offices with me.
>
> . . . .
>
> Mr. Telson met my Father briefly when he worked on a case for me. I assist in managing some of my [f]ather's properties and I wanted a tenant evicted from [the property]. I hoped this would help with the deal. I spoke to my [d]ad about the need to evict the tenant. This tenant had been difficult, and my [f]ather agreed to try and have the tenant evicted.

12

A-1891-21

Nunziatina did not explain why, if she did not have authority to act on behalf of Cucaro, she was present at the Lombardi law office to sign documents relating to the sale of the property and subsequent litigation.

Nunziatina also certified that she believed that one of the parcels that is the subject of the contract belonged to Barnes and "[a]t no point was [that parcel] even discussed with" her. She certified, "I have no idea how [that parcel] even entered into this deal. It was not supposed to be a part of the agreement. I apparently did not review the contract as closely as I should have, but I thought the lawyer would take care of it."

Notably, Cucaro did not file a certification from Telson explaining his understanding of who he represented when negotiating the sale of the property and during the ensuing litigation.[3]

In an oral opinion issued on February 4, 2022, the trial court denied Cucaro's motion. The court found that Cucaro's motion was based on evidence

---

[3] Barnes filed a certification in which she admitted that, despite the statement in her December 14, 2021 certification that "I am the owner of" one of the parcels that is the subject of the contract, she transferred ownership of that parcel to Cucaro three years earlier. Barnes claimed that the April 2018 transfer was to obtain a construction permit, contrary to the suggestion in the record that the transfer was to facilitate the April 30, 2018 closing. Notably, Barnes certified that the construction never took place because Cucaro became ill soon after the transfer. Yet, the only evidence in the record of Cucaro's admission to a medical facility indicates he was admitted in March 2019, nearly a year later.

A-1891-21

that was available to him when he filed his motion to vacate the February 22, 2019 final judgment.  The court concluded that

> it seems to me that essentially what has happened is precisely what the rule is designed to avoid.  The defendant looks to correct insufficiencies in his original moving papers by way of further information with respect to his medical condition which he had asserted in the earlier application, was what prevented him from being able to properly . . . defend against the claims or participate or move to vacate the judgment earlier. Because again the judgment that we're talking about was entered by the [c]ourt in February of 2019 really almost three years ago at this point.

The court found that the evidence Cucaro submitted in support of his motion relating to his medical condition, and Nunziatina's actions "was certainly available to the defendant at the time that the earlier application was heard."  In addition, the court concluded that even if it were to consider the new evidence "the majority of the material submitted to the [c]ourt with respect to medical conditions that defendant was addressing, largely if not entirely come completely after all of the initial litigation and the underlying suit . . . as well as the proof hearing and the entry of damages."  Thus, the court concluded, reconsideration of the December 17, 2021 order was not warranted.

A February 11, 2022 order memorializes the trial court's decision.

This appeal follows. Cucaro argues the trial court erred by: (1) not vacating the judgment under R. 4:50-1(a), (c), (d), and (f); (2) not reconsidering its December 17, 2021 order; and (3) considering Garden State's sur-reply brief in opposition to the motion for reconsideration.

II.

Rule 4:50-1 "is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Manning Eng'g, Inc. v. Hudson Cnty. Park Comm'n, 74 N.J. 113, 120 (1977). To balance these goals, "[a] court should view 'the opening of default judgments . . . with great liberality,' and should tolerate 'every reasonable ground for indulgence . . . to the end that a just result is reached.'" Mancini v. EDS ex rel N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993) (alterations in original) (quoting Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div.), aff'd, 43 N.J. 508 (1964)).

The movant bears the burden of demonstrating a right to relief. Jameson v. Great Atl. & Pac. Tea Co., 363 N.J. Super. 419, 425-26 (App. Div. 2003). All doubts, however, shall be resolved in favor of the party seeking relief. Mancini, 132 N.J. at 334. Equitable principles should influence a court's decision to

vacate a default judgment. Hous. Auth. v. Little, 135 N.J. 274, 283 (1994); Pro. Stone, Stucco & Siding Applicators, Inc. v. Carter, 409 N.J. Super. 64, 68 (App. Div. 2009).

We review a trial court's decision to deny a motion to vacate a default judgment under Rule 4:50-1 for abuse of discretion. Deutsche Bank Nat'l Tr. Co. v. Russo, 429 N.J. Super. 91, 98 (App. Div. 2012). We will not reverse the trial court's decision unless it is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)). Indeed, "[t]he trial court's determination under [Rule 4:50-1] warrants substantial deference," and the abuse of discretion must be "clear" to warrant reversal. Ibid.

Rule 4:50-1 provides, in relevant part:

> [o]n motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; . . . (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; . . . or (f) any other reason justifying relief from the operation of the judgment or order.

16

Under subsection (a) of the Rule, a "defendant seeking to set aside a default judgment must establish that his failure to answer was due to excusable neglect and that he has a meritorious defense." Deutsche Bank, 429 N.J. Super. at 98 (quoting Goldhaber v. Kohlenberg, 395 N.J. Super. 380, 391 (App. Div. 2007)). Excusable neglect refers to a default that is "attributable to an honest mistake that is compatible with due diligence or reasonable prudence." Ibid. (quoting Guillame, 209 N.J. at 468). The type of mistake warranting relief under the Rule is one that the party could not have protected themselves against. DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 263 (2009).

Under subsection (c) of the Rule, "[f]raud is not presumed; it must be proven through clear and convincing evidence." Stochastic Decisions, Inc. v. DiDomenico, 236 N.J. Super. 388, 395 (App. Div. 1989) (citing Albright v. Burns, 206 N.J. Super. 625, 636 (App. Div. 1986)).

Pursuant to R. 4:50-2, a motion for relief pursuant to subsection (a) and (c) of R. 4:50-1 must be filed "not more than one year after the judgment . . . was entered . . . ." It is undisputed that Cucaro filed his motion to vacate the February 17, 2019 final judgment on October 21, 2021, well more than two years after its entry. Our review of the record reveals no justification for disturbing

the trial court's conclusion that Cucaro's request for relief under subsections (a) and (c) of the Rule was untimely.

Relief under subsection (f) of Rule 4:50-1 is available only when "truly exceptional circumstances are present." Little, 135 N.J. at 286 (citation omitted). "The movant must demonstrate the circumstances are exceptional and enforcement of the judgment or order would be unjust, oppressive or inequitable." Johnson v. Johnson, 320 N.J. Super. 371, 378 (App. Div. 1999) (citation omitted). A motion for relief under subsection (f), and subsection (d), where a defendant alleges a judgment is void, must be filed "within a reasonable time . . . ." R. 4:50-2.

We have reviewed the record and conclude that the trial court did not mistakenly exercise its discretion when it determined that Cucaro did not seek relief under subsections (d) and (f) within a reasonable time. In 2018, the trial court found that Garden State effectuated service of its complaint and order to show cause on Cucaro. The record demonstrates that Cucaro was aware of the August 20, 2018 order compelling specific performance, given that an attorney forwarded to Garden State's counsel a proposed consent order resolving the August 20, 2018 order that was signed by Cucaro and his property manager daughter. Garden State subsequently made numerous attempts to collect on the

February 17, 2019 final judgment. While Cucaro submitted evidence that he was under medical treatment for periods of time, he offered no proof that he was hospitalized for extended periods and unable to manage his affairs before or after entry of the judgment. Nor did he establish that his spouse, an attorney who certified that she was involved in all of Cucaro's real estate transactions, or his daughter, who managed some of his properties and held herself out as his agent for purposes of signing and negotiating the contract to sell the property, were unable to communicate with him concerning the judgment.

Nor do we find in the record a basis on which to disturb the February 11, 2022 order denying Cucaro's motion for reconsideration. Rule 4:49-2 provides:

> Except as otherwise provided by R. 1:13-1 (clerical errors) a motion for rehearing or reconsideration seeking to alter or amend a judgment or final order shall . . . state with specificity the basis on which it is made, including a statement of the matters or controlling decisions that counsel believes the court has overlooked or as to which it has erred, and shall have annexed thereto a copy of the judgment or final order sought to be reconsidered and a copy of the court's corresponding written opinion, if any.

"A motion for reconsideration . . . is a matter left to the trial court's sound discretion." Lee v. Brown, 232 N.J. 114, 126 (2018) (quoting Guido v. Duane Morris, LLP, 202 N.J. 79, 87 (2010)); see also Cummings v. Bahr, 295 N.J. Super. 374, 389 (App. Div. 1996). A party may move for reconsideration of a

19

court's decision pursuant to Rule 4:49-2, on the grounds that (1) the court based its decision on "a palpably incorrect or irrational basis," (2) the court either failed to consider or "appreciate the significance of probative, competent evidence," or (3) the moving party is presenting "new or additional information . . . which it could not have provided on the first application." Id. at 384 (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401-02 (Ch. Div. 1990)). The moving party must "initially demonstrate that the [c]ourt acted in an arbitrary, capricious, or unreasonable manner, before the [c]ourt should engage in the actual reconsideration process." D'Atria, 242 N.J. Super. at 401. A motion for reconsideration is not an opportunity to "expand the record and reargue a motion. . . . [It] is designed to seek review of an order based on the evidence before the court on the initial motion, . . . not to serve as a vehicle to introduce new evidence in order to cure an inadequacy in the motion record." Capital Fin. Co. of Del. Valley v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008).

As the trial court aptly found, the information submitted in support of Cucaro's motion for reconsideration was available to him when he made his original motion. It is apparent that he, after retaining counsel, attempted to use his motion for reconsideration as a vehicle to supplement his original motion with evidence that could have been presented earlier. Relief was not warranted.

To the extent we have not specifically addressed any of Cucaro's remaining claims, we conclude they lack sufficient merit to warrant discussion in a written opinion.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1891-21