**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2613-22

STONE WOOL 22, LLC,

     Plaintiff-Respondent,

v.

NIGEL STREATER,

     Defendant-Appellant,

and

MRS. NIGEL STREATER,
spouse of NIGEL STREATER,
STATE OF NEW JERSEY, and
STATE FARM INSURANCE
COMPANY,

     Defendants.

_____

        Submitted June 3, 2024 – Decided July 1, 2024

        Before Judges DeAlmeida and Bishop-Thompson.

        On appeal from the Superior Court of New Jersey, Chancery Division, Camden County, Docket No. F-005869-21.

Nigel Streater, appellant pro se.

Honig & Greenberg, LLC, attorneys for respondent (Adam D. Greenberg, of counsel and on the brief).

PER CURIAM

Defendant Nigel Streater appeals from the March 31, 2023 order of the Chancery Division denying his motion pursuant to Rule 4:50-1(a) and (f) to vacate the November 22, 2022 final judgment in this tax lien foreclosure action. We affirm the trial court's order to the extent that it denied relief under Rule 4:50-1(a). However, in light of the recent decision of the United States Supreme Court in Tyler v. Hennepin Cnty., 598 U.S. 631 (2023), issued after entry of the trial court's order, we remand the matter for reconsideration of Streater's motion under Rule 4:50-1(f).

I.

In 2018, Streater purchased residential property on Spruce Street in Camden for $14,000. He obtained the property from an entity that acquired it through foreclosure on a tax lien.

Streater failed to pay the 2018 and 2019 local property taxes on the parcel. As a result, on June 17, 2019, the city sold a tax sale certificate for the property in the amount of $1,302.48, with a $1,300 premium, to FIG NJ19, LLC (FIG).

More than three years later, on October 11, 2021, FIG sent Streater a notice of intent to foreclose on the tax lien. The notice listed a redemption amount of $4,177.69 and advised Streater that if the tax sale certificate was not redeemed within thirty days, FIG would file a foreclosure complaint. The notice was sent to the street address listed for Streater in the records of the tax collector for delivery of tax bills relating to the property. That address appears as Streater's address on the deed issued when he purchased the property. The notice was sent by certified and regular mail and neither mailing was returned as undeliverable. Streater did not redeem the tax certificate.

On November 19, 2021, FIG filed a complaint in the Chancery Division to foreclose the right to redeem the certificate. FIG attempted service on Streater at the same address. That service attempt was unsuccessful. A second attempt to serve Streater at that address resulted in someone signing for the mailing on January 26, 2022. The signature, however, is a series of straight lines.

On March 14, 2022, a copy of the complaint and summons were served on Streater by delivery to him personally. Streater failed to answer or otherwise respond to the complaint or to redeem the tax certificate.

On April 20, 2022, the court entered default against Streater. FIG mailed a copy of the default to Streater. The mailing was not returned.

3

On August 2, 2022, FIG moved for an order setting a final date on which to redeem the certificate. FIG served the motion on Streater by regular and certified mail. Neither mailing was returned.

On August 22, 2022, the trial court entered an order fixing October 21, 2022, as the deadline to redeem the certificate. The following day, FIG served a copy of the order on Streater by certified and regular mail. Streater signed an acknowledgment of receipt of the certified mail on August 25, 2022. Streater did not redeem the certificate.

On November 9, 2022, plaintiff Stone Wool 22, LLC moved to be substituted as plaintiff and for entry of final judgment of foreclosure. The motion was served on Streater by certified and regular mail. The certified mail was delivered on November 12, 2022, although the signature line on the receipt is a series of straight lines. The regular mail was not returned.

On November 22, 2022, the trial court entered final judgment foreclosing Streater's right of redemption of the tax sale certificate and vesting title in the property in plaintiff. Plaintiff mailed a copy of the judgment to Streater by certified and regular mail. Neither mailing was returned as undeliverable.

On December 5, 2022, the trial court entered a judgment of possession of the property in favor of plaintiff. The following day, Streater attempted to

redeem the tax certificate for $6,528. The city tax collector refunded the payment to Streater after confirming that title to the property had transferred to plaintiff in the final judgment. On February 8, 2023, the trial court denied Streater's motion to stay his eviction from the property.

On February 17, 2023, Streater moved pursuant to Rule 4:50-1(a) and (f) to vacate the final judgment and permit him to redeem the tax certificate. In support of his motion, Streater submitted a certification in which he stated that the property was his residence and that he was "unaware of the foreclosure." He denied having been served with the foreclosure complaint, stated that he did "not remember getting any of their mailings, but it is possible they were received and not understood," and claimed to have been ill and to have "lost some of [his] ability to take care of the basic needs in [his] life." Streater stated that he was hospitalized with COVID-19 in 2021 and 2022, injured in a collision with a drunk driver, and the victim of a home invasion robbery. He did not explain how these events interfered with his receipt of notices relating to the foreclosure proceeding that were sent to him by certified and regular mail and not returned.

In addition, Streater alleged that the property had a fair market value of approximately $130,000. He contended that the redemption amount on the tax certificate was approximately $7,000, and that the final judgment unjustly

deprived him of approximately $123,000 of excess equity. Streater stated that he was ready, willing, and able to satisfy the tax certificate in the event the court vacated the final judgment.

Plaintiff opposed the motion, arguing that Streater had been personally served with the complaint and that subsequent mailings relating to the foreclosure action were mailed to him and not returned. Plaintiff asserted that Streater is a real estate investor who owns other properties in Camden for which he did not pay local property taxes, and which were the subject of tax foreclosure proceedings. According to plaintiff, the record demonstrates that Streater intentionally waited until the last possible minute to attempt to redeem the tax certificate, but failed to recognize that the final judgment foreclosed his right of redemption. Plaintiff pointed out that during the period Streater claimed to have been ill, unable to handle his basic affairs, and without funds to redeem the tax certificate, he purchased property for $40,000 in Camden, casting doubt on the veracity of his certification.

On March 30, 2023, the trial court issued an oral opinion denying Streater's motion. The court noted that when Streater moved for a stay of eviction, the trial court found that he had been served with the foreclosure complaint. The court identified no basis on which to depart from its prior

6

finding. In addition, the court found that Streater did not establish excusable neglect for his failure to respond to the complaint, as he offered no valid excuse for not redeeming the tax certificate during the several years he occupied the property. A March 31, 2023 order memorializes the trial court's decision.

This appeal followed. Streater argues: (1) the record does not support the trial court's finding that he was served with the complaint; (2) the trial court erred by not holding an evidentiary hearing with respect to whether he was served with the complaint; and (3) United States Postal Service employees committed fraud by signing certified mail addressed to him to make it appear that he had been served with the complaint.

II.

Rule 4:50-1 "is designed to reconcile the strong interests in finality of judgments and judicial efficiency with the equitable notion that courts should have authority to avoid an unjust result in any given case." Manning Eng'g, Inc. v. Hudson Cnty. Park Comm'n, 74 N.J. 113, 120 (1977). To balance these goals, "[a] court should view 'the opening of default judgments . . . with great liberality,' and should tolerate 'every reasonable ground for indulgence . . . to the end that a just result is reached.'" Mancini v. EDS ex rel N.J. Auto. Full Ins. Underwriting Ass'n, 132 N.J. 330, 334 (1993) (alterations in original) (quoting

Marder v. Realty Constr. Co., 84 N.J. Super. 313, 319 (App. Div.), aff'd, 43 N.J. 508 (1964)).

The movant bears the burden of demonstrating a right to relief. Jameson v. Great Atl. & Pac. Tea Co., 363 N.J. Super. 419, 425-26 (App. Div. 2003). All doubts, however, shall be resolved in favor of the party seeking relief. Mancini, 132 N.J. at 334. Equitable principles should influence a court's decision to vacate a default judgment. Hous. Auth. v. Little, 135 N.J. 274, 283 (1994); Pro. Stone, Stucco & Siding Applicators, Inc. v. Carter, 409 N.J. Super. 64, 68 (App. Div. 2009).

We review a trial court's decision to deny a motion to vacate a default judgment under Rule 4:50-1 for abuse of discretion. Deutsche Bank Nat'l Tr. Co. v. Russo, 429 N.J. Super. 91, 98 (App. Div. 2012). We will not reverse the trial court's decision unless it is "made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis." US Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467-68 (2012) (quoting Iliadis v. Wal-Mart Stores, Inc., 191 N.J. 88, 123 (2007)) (internal quotations omitted). Indeed, "[t]he trial court's determination under [Rule 4:50-1] warrants substantial deference," and the abuse of discretion must be "clear" to warrant reversal. Ibid.

8

In addition, the Tax Sale Law (TSL), N.J.S.A. 54:5-1 to -137, "shall be liberally construed as remedial legislation to encourage the barring of the right of redemption by actions in the Superior Court to the end that marketable titles may thereby be secured." BV001 REO Blocker, LLC v. 53 W. Somerset St. Props., LLC, 467 N.J. Super. 117, 127-28 (App. Div. 2021) (quoting N.J.S.A. 54:5-85). However, "'that provision does not negate the specific textual provisions'" of the TSL "'that protect property owners' from forfeiture." Id. at 128 (quoting Simon v. Cronecker, 189 N.J. 304, 322 n.10 (2007)). "Significantly, although the [TSL's] main aim 'is to encourage the purchase of tax certificates, another important purpose is to give the property owner the opportunity to redeem the certificate and reclaim [their] land.'" Ibid. (quoting Simon, 189 N.J. at 319). See also Sonderman v. Remington Constr. Co., 127 N.J. 96, 109 (1992) ("The primary purpose of the [TSL] is not to divest owners of their property, but to provide a method for collecting taxes.").

N.J.S.A. 54:5-87 precludes a court from entertaining an "application . . . to reopen the judgment after three months from the date thereof, and then only upon the grounds of lack of jurisdiction or fraud in the conduct of the suit."

> We have interpreted N.J.S.A. 54:5-87 to permit relief
> from judgment, within three months, for any reason
> enumerated in Rule 4:50-1, Bergen-Eastern Corp. v.
> Koss, 178 N.J. Super. 42, 45 (App. Div. 1981), and

"then," meaning "thereafter," "only upon the grounds of lack of jurisdiction or fraud in the conduct of the suit," Town of Phillipsburg v. Block 1508, Lot 12, 380 N.J. Super. 159, 166 n.8 (App. Div. 2005) (emphasis omitted).

[BV001 REO Blocker, 467 N.J. Super. at 128.]

Thus, we concluded, tax sale foreclosure judgments, at least within the three-month statutory period, do not have a favored status over other types of judgments. Id. at 128-29. Streater's motion was filed within three months of entry of the November 22, 2022 final judgment.

We also held that wresting title to the property from the party in whose favor the tax foreclosure judgment was entered "is not the sort of 'prejudice' that a court must consider in weighing a request for relief." Id. at 129. In the absence of demonstrated prejudice, such as detrimental reliance on the judgment, the holder of the tax sale certificate will, upon redemption, be made whole by receipt of the repayment of the taxes and interest due on the property. Ibid.

Finally, we noted that a "lack of diligence in ensuring tax payments should not deprive [a property owner] of the opportunity to redeem after securing relief from the judgment." Id. at 130. All property owners whose failure to pay local property taxes "because of inattention, willful disregard, or impecuniousness," results in the issuance of a tax sale certificate are permitted to redeem their

property if they pay the tax sale certificate holder what is due.  Ibid.  Thus, the appropriate inquiry is "whether [the property owner's] conduct in failing to respond sooner to the tax foreclosure proceedings should be forgiven."  Ibid. (citations omitted).

Rule 4:50-1 provides, in relevant part:

> [o]n motion, with briefs, and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; . . . or (f) any other reason justifying relief from the operation of the judgment or order.

Under subsection (a) of the Rule, a "defendant seeking to set aside a default judgment must establish that his failure to answer was due to excusable neglect and that he has a meritorious defense."  Deutsche Bank, 429 N.J. Super. at 98 (quoting Goldhaber v. Kohlenberg, 395 N.J. Super. 380, 391 (App. Div. 2007)).  Excusable neglect refers to a default that is "attributable to an honest mistake that is compatible with due diligence or reasonable prudence."  Ibid. (quoting Guillaume, 209 N.J. at 468).  The type of mistake warranting relief under the Rule is one that the party could not have protected themselves against. DEG, LLC v. Twp. of Fairfield, 198 N.J. 242, 263 (2009).

Having carefully reviewed the record, we find no basis on which to conclude that the trial court abused its discretion when it denied Streater's motion for relief under Rule 4:50-1(a). The record supports the trial court's findings that Streater was served with the complaint. The record contains an affidavit of service. Streater produced no evidence undermining the credibility of that affidavit. Although Streater claimed the physical description of him in the affidavit was inaccurate, the medical records he submitted to the court describe Streater's height and weight to be similar to those reported by the party who served him with the complaint. In addition, Streater's claim that the address at which he was served was abandoned and vacant is contradicted by his subsequent statements that he renovated the property and was residing there.

In addition, Streater admitted with respect to the documents mailed to him that he did "not remember getting any of their mailings, but it is possible they were received and not understood." This admission undercuts Streater's claim to have been unaware of the foreclosure action and is contradicted by evidence in the record that he purchased the subject property from a tax certificate holder and owned other properties in Camden, some of which were the subjects of tax liens and tax foreclosure proceedings. Remarkably, the record establishes that during the period Streater claims to have been ill and unable to redeem the tax

12

sale certificate, he purchased an additional property in Camden for $40,000. In short, there is sufficient support in the record for the trial court to have found that Streater was aware of the foreclosure complaint, understood the tax foreclosure process, and had the financial means to redeem the tax certificate, but elected instead to purchase another property. Relief under Rule 4:50-1(a) was not warranted.[1]

We turn to Rule 4:50-1(f), a catch-all provision. Relief under subsection (f) of Rule 4:50-1 is available only when "truly exceptional circumstances are present." Little, 135 N.J. 274 at 286 (quoting Bauman v. Marinaro, 95 N.J. 380, 395 (1984)). "The movant must demonstrate the circumstances are exceptional and enforcement of the judgment or order would be unjust, oppressive or inequitable." Johnson v. Johnson, 320 N.J. Super. 371, 378 (App. Div. 1999) (citation omitted). "In such exceptional circumstances, [Rule] 4:50-1(f)'s 'boundaries are as expansive as the need to achieve equity and justice.'" Ibid. (quoting Court Inv. Co. v. Perillo, 48 N.J. 334, 341 (1966)). But "[t]he rule is

---

[1] We have considered and reject Streater's argument, raised for the first time on appeal and supported only by hearsay statements, that United States Postal Service employees fraudulently signed certified mail receipts to falsely make it appear Streater received documents related to the foreclosure proceedings.

limited to 'situations in which, were it not applied, a grave injustice would occur.'" Guillaume, 209 N.J. at 484 (quoting Little, 135 N.J. at 289).

After the parties submitted their briefs, the Supreme Court issued its unanimous opinion in Tyler, 598 U.S. 631. In that matter, Tyler failed to pay taxes on her residential property. Id. at 635. Under Minnesota law, after the taxes remained outstanding for a year, the county obtained a judgment against the property, transferring limited title to the State. Ibid. Tyler had three years to redeem the property and regain title by paying all taxes and late fees. Ibid. After she failed to redeem the property during that time, absolute title vested in the State. Ibid. At that point, the total outstanding taxes, penalties, and interest was $15,000. Ibid. Pursuant to statute, the State sold the property, obtaining $40,000, which extinguished Tyler's $15,000 debt, and distributed the remaining $25,000 to the county. Ibid. The county kept the $25,000 for its own use. Ibid.

Tyler subsequently filed a putative class action alleging the county had unconstitutionally retained the excess value of her home. Ibid. She alleged that the county's retention of the $25,000 constituted a taking under the Fifth Amendment and an excessive fine under the Eighth Amendment. Id. at 635-36.

Although Tyler was not successful in the district court or court of appeals, she prevailed before the Supreme Court. The Court rejected several arguments

14

offered by the county in defense of its retention of the excess equity in Tyler's property. First, the Court found that Tyler had standing to allege a taking, even though the property may have been encumbered by other debts that exceeded the excess equity obtained by the county. Id. at 637. The Court noted that although the tax sale extinguished the liens on Tyler's property, it did not extinguish her debts. Ibid. Thus, had Tyler recovered the $25,000 she could have used it to reduce her outstanding liabilities. Ibid.

In addition, the Court found that Minnesota recognized that a property owner has a property interest in the equity in their property. Id. at 638. The Court concluded that the county

> had the power to sell Tyler's home to recover the unpaid property taxes. But it could not use the toehold of the tax debt to confiscate more property than was due. By doing so, it effected a "classic taking in which the government directly appropriates private property for its own use." Tyler has stated a claim under the Takings Clause and is entitled to just compensation.
>
> [Id. at 639 (citation omitted).][2]

_____

[2] Because it found that Tyler had stated a plausible allegation of a taking under the Fifth Amendment and Tyler had conceded that just compensation for the taking would make her whole, the Court did not decide whether the county's retention of her excess equity constituted an excessive fine under the Eighth Amendment.

We subsequently held that Tyler applies to the TSL and that a third-party foreclosure on a tax sale certificate issued by a municipality that deprives a property owner of equity in the property beyond that necessary to satisfy the certificate constitutes a taking under the Fifth Amendment. 257-261 20th Ave. Realty, LLC v. Roberto, 477 N.J. Super. 339, 362, 366 (App. Div. 2023), certif. granted, 256 N.J. 535 (2024). We also held that relief under Rule 4:50-1(f) is appropriately granted where a property owner makes a timely application to vacate a final judgment of foreclosure on a tax sale certificate accompanied by a credible proffer to timely redeem the certificate in order to avoid a deprivation of significant excess equity in the property. Id. at 368-69.[3]

In support of his motion for a stay of eviction, Streater certified that the property had a fair market value significantly in excess of the amount necessary to redeem the tax sale certificate. Plaintiff contested Streater's allegation, contending that the fair market value of the property is lower than he suggested. Although Streater argued that the deprivation of excess equity in the property

---

[3] We note that on July 12, 2023, the Supreme Court issued a Notice to the Bar providing that, in response to the holding in Tyler, the Office of Foreclosure was temporarily suspended from recommending final judgment in tax sale certificate matters filed after May 25, 2023. Sup. Ct. of N.J., Notice to the Bar: Tax Foreclosures – (1) Suspension of Office of Foreclosure Recommendations of Final Judgment; and (2) Relaxation of Court Rules (July 12, 2023).

was an equitable basis on which the trial court should vacate the final judgment, his argument, in light of the holdings in Tyler and 257-261 20th Ave. Realty, is also fairly understood as a claim that the final judgment constitutes a taking of excess equity in violation of the Fifth Amendment.

Given Streater's claim, we vacate the March 31, 2023 order to the extent it denied him relief under Rule 4:50-1(f), and remand for a determination by the trial court of: (1) whether Streater has alleged a plausible claim that entry of the final judgment deprived him of significant equity in the property in excess of the amount necessary to redeem the certificate; and (2) if so, whether the prospect of such a deprivation warrants vacating the final judgment to permit Streater to promptly redeem the certificate and avoid the creation of a claim for just compensation. We leave to the trial court the determination of whether Camden, the entity that we assume, without deciding, would be responsible for providing just compensation to Streater in the event of a taking, should be joined as a party in this matter. We offer no opinion with respect to the fair market value of the property or whether Streater will establish that relief under Rule 4:50-1(f) is warranted.

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

17